THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *v.* LAWRENCE JOHNSON, Appellant.

(No. 70-119;

Fifth District—October 1, 1971.

Morton Zwick, of Defender Project, of Chicago, (Paul Bradley, and Kenneth L. Gillis, of Defender Project, of counsel,) for appellant.

Richard E. Richman, State's Attorney, of Murphysboro, for the People.

Mr. JUSTICE CREBS delivered the opinion of the court:

In a bench trial in the Circuit Court of Jackson County, Lawrence Johnson, the defendant, was convicted of aggravated battery and theft of less than $150. He was sentenced to the penitentiary for a term of not less than one nor more than three years. Confining his appeal to the battery conviction, he contends that the trial court erred in not exonerating him on his theory of self-defense, that the sentence imposed was excessive and that he was entitled to probation.

At the time of the incident, on February 24, 1970, defendant was 18 years of age and in the last semester of his senior year in high school. Admittedly he threw a brick at John Wittenborn, a teacher-coach, causing a two-inch laceration of his skull requiring 12 stitches to close. The facts leading up to the incident are in conflict. Wittenborn testified that about 4:00 o'clock in the afternoon he was coaching the freshman basketball squad in the gymnasium when he noticed the defendant in the hall. Remembering that he had failed to lock the locker room which was immediately below the gym, he went downstairs and encountered

the defendant coming out of the locker room with a billfold in his hand. After inquiry defendant first stated that it was his billfold but then after handing it to Wittenborn he accused another boy, Calvin Collier, of stealing it. Collier, a friend of defendant, immediately stated, "That wasn't me that stole it. That was you. Don't try to blame me." The coach then informed the boys that there had been quite a few thefts lately in the school and that he had finally caught somebody and they would have to go to the assistant principal's office. Defendant stated he was not going anywhere and started to walk off. The coach grabbed his arm but defendant jerked away. Then the coach saw two other students who had come by and he asked them to get Mr. Bowers, the assistant principal. He again caught defendant by the shoulder and defendant started swinging, broke loose, and headed down the corridor. At this point defendant picked up a brick door-stop and threw it at Wittenborn, hitting him behind the left ear and causing him to fall to his knees. After a few moments Wittenborn went outside where Mr. Bowers was holding the defendant and he walked up to defendant and wiped his bloody hand across defendant's face saying, "Look what you did now, you damn jerk." On cross-examination Wittenborn stated that he was a former professional football player and that he weighed 240 lbs. and was 6'1" in height.

A boy on the basketball team testified that the wallet was his, that he had left it in his pants in the locker room and had given no one permission to take it. Mr. Bowers testified that as assistant principal he was in charge of discipline at the school, that Wittenborn was on his knees when he arrived, bleeding profusely, and that he heard, but did not see, the thud of the brick. Bowers caught up with defendant outside and was holding him by the arm when Wittenborn came out holding a bloody towel to his head. He stated that Wittenborn did not hit defendant but he did wipe his bloody hand across defendant's face.

Testifying for the defense, Mark Hunter, another student, testified that defendant entered the locker room looking for Calvin Collier, that the coach and defendant came out of the locker room and both of them were carrying billfolds. When defendant started to walk off the coach grabbed him by the collar and threw him to the floor and when he got up the coach slapped him and hit him on the jaw with his fist and it was then that defendant threw the brick. Hunter also testified that he was outside when the coach came up and once again hit the defendant in the face with his fist and that he did not just wipe blood on his face. Defendant testified that he went to the locker room looking for Collier as he had his wallet; that the wallet defendant had in his hand when he came out was his own wallet; that the coach did not take the stolen wallet from him nor did he give it to him. Defendant stated further that he did not want

to go to the principal's office because he had not done anything and when he tried to walk away the coach slapped him, threw him to the floor and punched him in the face with his fist. He threw the brick to keep the coach from "further molesting and aggravating me." When he was outside with Mr. Bowers he stated that the coach again hit him in the face with his fist and he denied that the coach merely wiped blood on his face, stating there was only a small spot of blood under his eye which came from the coach's fist. Collier, the boy whom defendant accused of the theft, did not testify.

On rebuttal a police officer testified that he saw defendant immediately after the incident and that defendant's forehead, nose and cheek were streaked with blood but that he had no lacerations. An assistant State's Attorney stated that he saw defendant about a half hour later and he had dried blood on his forehead, down his nose and on his cheek, but that he had no marks or bruises on him. Close-up photographs of defendant taken the following day clearly showed no marks or blemishes on defendant's face.

We agree with defendant's argument as quoted from *People v. McClain*, 410 Ill. 280, that the test in self-defense is not what the jury thinks a reasonable man would believe but rather what the defendant, as a reasonable man, believed. But it is equally well settled that where the testimony of the accuser and the accused, and their supporting witnesses, is conflicting the issue is largely a question of determining the credibility of the witnesses and the weight to be given their testimony, and this determination is one properly to be made by the trier of the facts and not by a court of review. (*People v. Potts*, 403 Ill. 398; *People v. Jeffries*, 120 Ill.App.2d 39.) Here, defendant in effect argues that the very size of the coach and the fact that he was a former professional football player put him in fear of great bodily harm justifying the brick throwing. This well might be true if the rest of defendant's story were accepted as credible, *i.e.*, that the coach threw him to the floor, slapped him, hit him in the face with his fist and then again hit him while he was being held by the assistant principal. Apparently the the trial court did not accept this version of the incident, preferring to believe that the coach was merely trying to lead the boy to the assistant principal's office for whatever disciplinary action might be taken, and that the coach did not hit him either before the brick was thrown, or afterwards as defendant was being held by Mr. Bowers. Had he been hit, surely the results would have been evident to the witnesses and to the camera. We agree with the trial court's decision and find that defendant was proved guilty beyond a reasonable doubt and that defendant's action was not taken in self-defense. While we do not condone Mr. Wittenborn's action in wiping

blood on defendant's face, it is not beyond understanding, and, in any event, it has no bearing on defendant's guilt or innocence but only further accentuates the disparity between defendant's story and that presented by the State.

At the hearing in mitigation and aggravation it was determined that defendant was 18 years of age, that he lived at home with his mother and older brother and that his father and another brother were presently confined on a homicide charge. He was expelled from school after the incident and while out on bond pending his trial he worked nights at the Phelps Dodge plant earning approximately $50 a week, half of which he gave to his mother to help with her support. His only former record was a disorderly conduct charge. A representative of the Community Development Service connected with Southern Illinois University testified that she believed the defendant was anxious to finish his last semester in high school, that he was scholastically capable, had good motivation and that he was a good subject for rehabilitation. She further stated that she could arrange to have him enrolled in the Carbondale Community High School which takes part in the Delinquency Intervention Program supported by the Illinois State Department of Public Instruction. In this program he would be provided with a counselor and directed toward initiating and maintaining an adaptive behavior.

██ Under the circumstances present here we consider this case an appropriate one for a reduction of sentence under the authority granted courts of review by Supreme Court Rule 615(b)(4) (Ill. Rev. Stat. 1969, ch. 110A, par. 615(b)(4).) As we stated in *People v. Haynes*, (Ill.App.2d) Agenda 70-122, the purpose of modern day penology is the rehabilitation of the offender and an appropriate sentence is one which has the greatest potential of restoring one to a useful and productive place in society while at the same time adequately punishing the offender for his misconduct and safeguarding the public from further offenses. Defendant's offense was a serious one but he has already been confined for more than a year and we believe he has been adequately punished. He is approaching his 20th birthday and the sooner he is released the better chance he will have to finish high school and achieve a normal rehabilitation as an individual and as a productive man in society.

Accordingly, the judgment and sentence of the Circuit Court of Jackson County are hereby modified and defendant's sentence is reduced to a minimum of one year and a maximum of the time already served on his present conviction. As so modified the judgment is affirmed.

Judgment affirmed as modified.

EBERSPACHER and MORAN, JJ., concur.