THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* TULLIO INFELISE, Defendant-Appellant.

(No. 61190;

First District (4th Division)—September 10, 1975.

James J. Doherty, Public Defender, of Chicago (Tom Flynn and Donald S. Honchell, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Marcia B. Orr, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

The defendant, Tullio Infelise, was charged with the offenses of aggravated assault and failure to possess firearm registration cards. After a bench trial, he was convicted of aggravated assault and sentenced to a

term of probation for 1 year. The only issue presented in this appeal is whether he was proved guilty of aggravated assault beyond a reasonable doubt.

The complaining witness, Chicago Police Officer Samuel Geraci, testified that on July 15, 1974, at about 11 p.m., he and Officer Michael Grillo were off duty and driving in Grillo's private automobile. They were dressed in T-shirts and bermuda shorts and carried handguns in the waistband of their pants. At the corner of 28th and Wallace, they observed a late model black Ford with six or seven men, one of whom shouted to two girls standing near the corner, "we are going to come back to kill you and all of your friends."

Continuing his testimony, Geraci stated that the Ford automobile then sped off, followed by the two officers in Grillo's automobile, to 30th and Halsted, where Geraci approached them and attempted to identify himself as a police officer. However, the Ford again sped off to 924 West 29th Street, the defendant's residence. Four of the young men got out of the Ford and ran, and the officers followed the car around the block. When they returned, they saw the four men standing in front of defendant's house.

According to Geraci, the officers identified themselves as policemen. Two of the men ran away while Russell Pardro and the defendant remained. The defendant went into his house and returned to the porch a few seconds later with a double-barreled shotgun. The defendant pointed the gun at the officers and swore at them in Italian. His mother and sister then told him in Italian that the officers were policemen and to put the gun away. The defendant immediately went into the house, put the gun down, and came back outside. When the officers asked where the gun was the defendant told them that he put it in the house. He offered to get it, and then accompanied the officers into the house to get the gun.

On cross-examination, Officer Geraci stated that the defendant was neither the driver of the car nor the one who had threatened the two girls. The officer further stated that they were not attempting to apprehend anyone while chasing the Ford but were merely making a routine investigation. No traffic citations were issued to the driver of the Ford, and the defendant was not under suspicion of violating any criminal law at the time the officer first spoke with him. When the confrontation with the defendant occurred, Officer Geraci was carrying two guns, the butts of which were visible beneath his casual clothing.

Officer Michael Grillo gave an account of the events that transpired on the evening in question which was substantially the same as that of Geraci. According to Grillo, the officers showed their identification to the

defendant shortly before the confrontation. Grillo stated that the defendant was not under arrest at that time and that they were only conversing with him. The officer further testified that he lived in the area where the incident occurred but was not assigned to work there.

Paride Infelise, the defendant's father, was called as a witness on his behalf. The elder Infelise produced city and State identifications for the registration of the weapon which the defendant had used during the incident. Mr. Infelise stated, with the assistance of an interpreter, that he kept the gun in his house.

The next witness to testify on behalf of the defendant was his cousin, Russell Pardro, who was also a passenger in the Ford with the defendant on the night in question. The witness stated that they did not see any girls at 28th and Wallace because they were talking among themselves. According to Pardro, the car in which the officers were riding started "tailgating" behind them at 28th and Wallace. When they stopped at 29th Street, one of the officers got out of the car. The witness told the driver that the man behind them had a gun and the driver sped off because there had been trouble in the neighborhood. Pardro stated that he did not know at that time that the man with a gun was a police officer.

Pardro further testified that one of the men who had been chasing them got out of the other car and approached the Ford at 30th and Halsted. The man attempted to put his hand by the driver's window, so they again sped off for several more blocks, where four of them left the car and ran. Pardro remained with the driver until they came back to the defendant's house. When Pardro got out of the Ford, a man approached him with a gun pointed in his direction, according to Pardro, and asked about someone with long hair. Several people gathered nearby and Mrs. Infelise shouted at the defendant to call the police. The defendant came out of the house with a shotgun. Shortly thereafter, according to the witness, the officer said he was a policeman.

The defendant, Tullio Infelise, testified in his own behalf that he came from Italy 3 years ago and currently resided at 924 West 29th Street in the city of Chicago. On the night in question, the defendant stated, he got out of the Ford in front of his house and went inside. His mother asked what was going on. The defendant looked out the window and saw a man pointing a gun at his cousin. Then, he took the shotgun and went outside to defend Pardro. The officer said, "Wait, wait, I'm a police officer," so the defendant put the gun away.

The State offered no rebuttal testimony. After closing arguments, the defendant was found guilty of aggravated assault but the charge of failure to possess firearm registration cards was dismissed. The only issue

before us in this appeal is whether the defendant was proved guilty of aggravated assault beyond a reasonable doubt.

 The sole mental state necessary to sustain a conviction of aggravated assault is that of knowledge. (*People v. Litch* (1972), 4 Ill.App.3d 788, 281 N.E.2d 745.) The statute provides:

> "A person commits an aggravated assault, when, in committing an assault, he: * * * [k]nows the individual assaulted to be a peace officer, * * * while such officer is engaged in the execution of any of his official duties; * * *." Ill. Rev. Stat. 1973, ch. 38, § 12—2(a)(6).

The defendant contends that he did not know Geraci was a police officer and that he was acting in defense of a member of his family. When the defense of justifiable use of force is interposed, the State must prove that the actions of the accused are unjustified. The test is not what the court thinks a reasonable man would believe but rather what the defendant, as a reasonable man, believed. *People v. McClain* (1951), 410 Ill. 280, 102 N.E.2d 134; *People v. Johnson* (1971), 1 Ill.App.3d 616, 274 N.E.2d 221.

While it is the function of the finder of fact to determine the credibility of witnesses and the weight to be accorded their testimony, this court must review all of the evidence and determine whether the defendant was proved guilty of aggravated assault beyond a reasonable doubt. Where our review of the record leaves us with a grave and substantial doubt of defendant's guilt, it is our duty to reverse the conviction. *People v. Willson* (1948), 401 Ill. 68, 81 N.E.2d 485; *People v. Bush* (1972), 4 Ill.App.3d 669, 281 N.E.2d 734.

After reviewing the entire record, we are compelled to conclude that the evidence did not prove beyond a reasonable doubt that defendant knowingly assaulted a police officer engaged in the performance of his official duties. The evidence is uncontroverted that the two police officers were driving in a private automobile dressed in cut-off shorts, T-shirts, and carrying handguns in their waistbands. Thus, their dress and automobile gave no obvious appearance of their authority as police officers. The defendant is a 17-year-old immigrant who does not speak English well. Officer Geraci conceded in his testimony that the defendant put the gun away as soon as his mother told him in Italian that the two men were police officers.

In considering the reasonableness of the defendant's actions, we have also reviewed the circumstances that preceded the incident. Both officers testified that they pursued a vehicle in which the defendant was riding after one of the passengers threatened two girls standing near a

corner. Geraci stated that the defendant was neither the driver of the automobile nor the person who uttered the threats. There was no explanation as to why the officers abandoned their pursuit of the party who allegedly threatened the girls and instead concentrated their efforts on the defendant and Pardro outside the Infelise residence. On the other hand, the defendant's witnesses claimed that no threats were made and that the occupants of the car were bewildered and frightened when two men in casual dress with handguns began chasing them.

The officers' assertion that they identified themselves as police officers was denied by Russell Pardro, who stated that they immediately began to question him with their handguns drawn. The defendant stated that he was not present when the questioning began, that he became alarmed when he saw the officer pointing a gun at his cousin, and that the officers did not identify themselves as policemen until after he had gone onto the porch with the shotgun.

■■ The reasonableness of identification as police officers was before us in *People v. Bush* (1972), 4 Ill.App.3d 669, 281 N.E.2d 734. There, the accused was a 63-year-old man who stopped in a public washroom on his way home from work. An off-duty policeman in civilian clothes attempted to arrest him in the washroom, and the accused resisted. The defendant testified that he did not believe the man who accosted him was a police officer because of his youthful appearance and casual clothing. We reversed the trial court's conviction of resisting arrest and stated that the physical surroundings, the officer's civilian clothes and overall actions were such that a 63-year-old man could reasonably have doubted that the man was a police officer in the performance of an authorized arrest. Similarly, we hold here that, in view of the circumstances surrounding the confrontation between Officer Geraci and the defendant, and the casual dress of the officers, the evidence was not sufficient to prove beyond a reasonable doubt that the defendant knowingly assaulted a police officer engaged in the performance of his official duties.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed.

Reversed.

DIERINGER, P. J., and BURMAN, J., concur.