THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
STEPHAN SEDLACKO, Defendant-Appellant.

First District (5th Division)   No. 77-776

Opinion filed September 29, 1978.

Mel Cahan, of Chicago (Lurie & Cahan, Ltd., of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Kenneth T. McCurry, and Carol A. Kearney, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Following a jury trial, defendant was convicted of aggravated assault in violation of section 12—2(a)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 12—2(a)(1)) and sentenced to probation for a

period of two years. On appeal, he contends that: (1) he was not proven guilty beyond a reasonable doubt; (2) the trial court erred in refusing to instruct the jury on the defense of justification; (3) the trial court erred in admitting immaterial and irrelevant evidence; (4) he was denied a fair trial by the State's closing argument, and (5) he was deprived of the effective assistance of counsel.

At trial the following pertinent evidence was adduced.

*For the State*
  *K. Fowler, a Chicago Police Officer*

On Sunday, July 27, 1975, he was on duty in a police vehicle along with his partner Keith Baker. They were wearing summer uniforms which consisted of light blue short sleeve shirts open at the neck, dark blue pants, black shoes and hats. The words "Chicago Police Department" appeared on one sleeve of each shirt. At approximately 8 p.m., he and Baker received a radio assignment directing them to the apartment of Mr. and Mrs. Chalice on the 15th floor at 5901 N. Sheridan Road where they were told by the Chalices that they had observed two individuals who appeared to be arguing on the fifth floor balcony of a building directly across Sheridan Road to the west. From the balcony of the Chalice apartment, he observed "an individual, sitting, slumped" on the floor of the balcony. He and Baker immediately went to 5906 N. Sheridan Road and rang several bells until "somebody buzzed us in." Proceeding to the fifth floor they went to the north end of the building where they observed what appeared to be a bullet hole in a door on the east side of the corridor. They then drew their service revolvers, knocked on the door, and announced, "This is the police." The door was opened by a woman later identified as Peggy Klein who immediately retreated into a bedroom.

After Baker entered the apartment, Fowler followed a foot behind and to the right. The living room furniture was in disarray, potted plants were tipped over and there was soil on the carpeting. When he was about six feet into the apartment he also observed in the living room, "a male, white, with his back to us," standing facing east toward the balcony. The man's arms were to his sides and in his right hand he held an automatic pistol. Although he was not certain whether the lights were on or off, he could see clearly because "the room was well lit."

The man with the gun swiveled around, raised his arm and pointed the pistol directly at them and said, "Who the hell are you?" He identified the man as defendant, Stephan Sedlacko. Defendant was unshaven, had long hair, and wore only cowboy boots and a pair of shorts. When defendant pointed the gun at him he "became afraid," and he and Baker, "retreated backwards, out to the outside corridor, to seek cover." He was acting out

of fear for his life. As he backed the three or four steps out to the corridor, he never lost sight of defendant. Defendant continued to face him and Baker with the gun "pointed at my partner and myself."

When he and Baker reached the corridor they announced, "Police." Although he told him to drop the gun, defendant continued to point it "towards us." Baker next told him to drop the gun. Defendant still did not drop it, but continued to face them with the gun pointed "toward us." After he told him a third time to drop the gun, defendant "hesitated, and then, lowered his arm," and released the automatic pistol. He and Baker then re-entered the apartment and placed defendant under arrest.

On cross-examination he stated that he had his service revolver drawn as he entered the apartment because, after speaking with the Chalices and observing the bullet hole, he believed someone might have been shot in the apartment. He admitted that his retreat from the apartment was rapid and that he was frightened at the time. He sought cover behind the outside wall, and the retreat was instinctive. At the time he believed defendant could have shot him. Defendant pointed the gun at him and Baker for a period of about four to five seconds after being told to drop the gun. Although he had his service revolver in his hand he did not raise the gun until he reached the outside corridor.

His opinion as to how long defendant continued to point the gun at him was only an estimate since he did not time the incident.

*Keith Baker, a Chicago Police Officer and Officer Fowler's partner*

In addition to substantially corroborating Fowler's testimony, Baker testified that the Chalices initially observed two men arguing on the fifth floor balcony of a building across the street. Later they again heard the arguing and saw the men fighting. One man went inside the apartment while the other remained on the balcony. When a woman closed the door to the balcony the man outside "appeared to be afraid" and started banging on the window as if he wanted to get back in the apartment. As the Chalices continued to observe this incident, they heard a "cracking noise" which they thought to be shots or perhaps firecrackers. After the Chalices heard this cracking noise "they noticed a man slumped and fall onto the balcony." They then decided to call the police.

When the Chalices pointed out the balcony, he was able to observe the man "slumped" on the balcony floor. He and Fowler immediately proceeded to the fifth floor of the building across the street and approached the apartment which they assumed would contain the "balcony [on] which the man was lying." They knocked on the door and said they were police officers. Observing what appeared to be a bullet hole in the door, they drew their guns and held them at their sides. After a woman opened the door, she ran to a bedroom "real quick," as if she were afraid of something. He testified that when defendant "swung around"

with a gun in his hand, "we kind of retreated, you know, we were afraid we were going to get shot."

He testified that the lighting conditions were good and "I guess you [could] see everybody and see the interior of the apartment very well." He described defendant as having worn cowboy boots and shorts with no shirt. Defendant had long hair and "looked kind of wild" with glassy eyes and a two- or three-day-old beard. He examined the gun after defendant dropped it and found one bullet in the chamber and seven more in the clip inside the gun.

On cross-examination he testified that the only words he and Fowler said to defendant were "drop it." Between first turning around and finally dropping the gun, defendant was never out of his full view.

OPINION

Defendant first contends that he was not proven guilty beyond a reasonable doubt. Although he concedes that the evidentiary facts are undisputed, he argues that the State failed to prove that he knowingly engaged in conduct which constituted an aggravated assault. Basically, his argument is that it would be reasonable to conclude from the evidence that he pointed the gun at the police officers as a mere startled response or instinctive reaction to the presence of unknown intruders in the apartment.

■■ In this case defendant was convicted of aggravated assault in violation of section 12—2(a)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 12—2(a)(1)) which consists of an assault committed with a deadly weapon. An assault is committed when a person, without lawful authority, "engages in conduct which places another in reasonable apprehension of receiving a battery." (Ill. Rev. Stat. 1975, ch. 38, par. 12—1(a).) The only mental state required to sustain a conviction of aggravated assault is that of knowledge. (*People v. Infelise* (1975), 32 Ill. App. 3d 224, 336 N.E.2d 559.) Knowledge, because of its very nature, is ordinarily proven by circumstantial evidence, rather than by direct proof. (See *People v. Marchese* (1975), 32 Ill. App. 3d 872, 336 N.E.2d 795; *People v. Faginkrantz* (1960), 21 Ill. 2d 75, 171 N.E.2d 5.) Furthermore, it has been stated that "the intent with which an act is committed may be inferred from the act itself and the surrounding circumstances." *People v. Almond* (1975), 31 Ill. App. 3d 374, 376, 333 N.E.2d 236, 238.

We must review all the evidence to determine whether defendant was proved guilty beyond a reasonable doubt of aggravated assault. (*People v. Infelise* (1975), 32 Ill. App. 3d 224, 336 N.E.2d 559.) We will reverse a conviction, however, only where the evidence leaves us with a grave and substantial doubt as to defendant's guilt. *People v. Willson* (1948), 401 Ill. 68, 81 N.E.2d 485.

■■ Although defendant's initial turning and pointing of the gun, combined with his exclamation "Who the hell are you?" may arguably have been a startled or instinctive response, the testimony of the officers conclusively demonstrates that his conduct went beyond such a response. When the officers entered the apartment and approached defendant they were dressed in full police uniforms, including hats, and carried service revolvers drawn at their sides. Defendant continued to point the gun directly at the officers as they retreated several steps back to the corridor and even after Officer Fowler announced "Police." The officers each testified that they told defendant three times to drop the gun before he finally, after a hesitation, lowered his arm to release the gun. Although this entire transaction apparently occurred in the course of only several seconds, the evidence is sufficient to establish that defendant continued to point the gun directly at the police officers after having sufficient time, opportunity and notice to realize the nature and consequence of his actions. We do not agree that the evidence raised a reasonable doubt as to whether defendant acted with the requisite knowledge and will therefore not upset the jury's determination.

Defendant next contends that the State failed to prove beyond a reasonable doubt that he was not justified in pointing the gun at the police officers. He argues that the evidence raises a reasonable doubt as to whether he was acting in self-defense or in defense of dwelling.

Self-defense is authorized under section 7—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 7—1) which provides that:

"A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force."

Defense of dwelling is provided for under section 7—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 7—2), which provides in pertinent part that:

"A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to * * * terminate such other's unlawful entry into * * * a dwelling."

The justifiable use of force is an affirmative defense (Ill. Rev. Stat. 1975, ch. 38, par. 7—14), which means that "unless the State's evidence raises the issue involving the alleged defense, the defendant, to raise the issue, must present some evidence thereon." (Ill. Rev. Stat. 1975, ch. 38, par. 3—2(a).) Once an affirmative defense has been raised, the State has the burden of proving the defendant guilty beyond a reasonable doubt as to that issue as well as to all other elements of the offense. Ill. Rev. Stat. 1975, ch. 38, par. 3—2(b).

■■ We have thoroughly reviewed the record here and find nothing in the evidence offered by the State to raise the issues of self-defense or defense of dwelling. The evidence offered by the State, which we have previously discussed, creates no reasonable doubt that defendant did not have sufficient time and opportunity to perceive the identity of the police officers and comply with their orders. Furthermore, defendant himself, who did not testify, clearly offered no evidence to raise the affirmative defenses of justification. Accordingly, defendant's contention is without merit.

Defendant also contends that the trial court erred in refusing to instruct the jury on the justification defenses of self-defense and defense of dwelling.

■■ It is well established that the jury need not be instructed on the issue of self-defense unless evidence raising that defense has been presented. (*People v. Christensen* (1978), 61 Ill. App. 3d 856, 378 N.E.2d 612; *People v. Allen* (1972), 50 Ill. 2d 280, 278 N.E.2d 762.) We believe this same principle applies with equal validity to the issues of defense of dwelling. As we have discussed herein, the record before us fails to reveal any evidence to support a claim of either self-defense or defense of dwelling. Therefore, the trial court properly refused to instruct the jury on the issue of justification.

■■ Defendant further contends that the trial court erred by instructing the jury that an assault is committed where a person acts "without lawful authority" without defining that phrase as meaning "without legal justification."

The trial court gave the following instruction to the jury:

"(a) person commits the crime of assault who without lawful authority engages in conduct which places another in reasonable apprehension of receiving bodily harm."

This instruction was adapted from Illinois Pattern Jury Instructions, Criminal, No. 11.01 (1968). The Committee Comments to this instruction state that the phrase "without lawful authority" should be included in the instruction only where there is some evidence that defendant in fact acted with lawful authority and the issue is therefore raised. We have found no evidence here indicating that defendant acted with lawful authority. Consequently, we do not believe that the phrase "without lawful authority" should have been included in the instruction defining assault. However, we do not believe the inclusion of the phrase here constitutes reversible error. The evidence of defendant's guilt here is overwhelming and we are convinced beyond a reasonable doubt that the jury's decision would have been the same even if no error had been committed.

■■ Defendant next contends that the trial court erred in admitting irrelevant and immaterial evidence. Specifically, he refers to the

testimony of the police officers concerning their conversation with the Chalices, the alleged bullet hole in the apartment door and defendant's appearance and dress at the time of the incident. Our supreme court has stated that "[i]t is always proper to admit proof of facts and circumstances attendant upon the arrest where such facts and circumstances logically tend, in any degree, to show the commission of the crime charged." (*People v. Wedge* (1943), 383 Ill. 217, 219, 48 N.E.2d 943, 944.) At issue here was whether defendant, without lawful authority, knowingly placed Officer Baker in reasonable apprehension of receiving a battery. The evidence to which defendant objects tends logically to prove that the police officers were acting in the lawful performance of their duties in entering the apartment. It further indicates that Officer Baker's apprehension of receiving a battery was reasonable under the circumstances. This evidence was relevant and, furthermore, we do not believe that it was unduly prejudicial to defendant.

■■ We reject defendant's argument that the conversation with the Chalices was hearsay. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. (*People v. Carpenter* (1963), 28 Ill. 2d 116, 190 N.E.2d 738.) The testimony here was not admitted to prove the truth of the matter asserted and the jury was so instructed by the trial court.

■■ Defendant next contends that the State improperly commented upon his failure to testify.

The Assistant State's Attorney made the following comments during her closing argument:

> "* * * the defendant, as I believe the instructions will show, has a right to remain silent. As the instructions will show, absolutely nothing can be inferred by this. The State doesn't mean to imply that it does. The defendant has remained silent and there it stands. That's not the point."

It is true that no reference or comment should be made upon defendant's neglect to testify in a criminal proceeding. (Ill. Rev. Stat. 1975, ch. 38, par. 155—1.) However, a comment by the State which either directly or indirectly refers to defendant's failure to testify is not reversible error where found to be harmless beyond a reasonable doubt. (See *People v. Lee* (1976), 44 Ill. App. 3d 43, 357 N.E.2d 888; *People v. Tate* (1970), 45 Ill. 2d 540, 259 N.E.2d 791, *cert. denied* (1971), 401 U.S. 941, 28 L. Ed. 2d 222, 91 S. Ct. 944.) The comments here are quite similar to those made by the prosecutor in *Tate* where the supreme court stated:

> "We believe that when the prosecutor's comments are read as a whole, no reversible error is shown. The prosecutor made clear to the jury that no unfavorable inference was to be drawn simply because the defendant did not testify in his own behalf.

Accordingly, any improper comment on defendant's failure to testify was promptly cured." 45 Ill. 2d 540, 545, 259 N.E.2d 791, 793-94.

We likewise do not believe that the prosecutor's comments in the instant case, when read in the context of the entire closing argument, were of a prejudicial nature. Additionally, the trial court instructed the jury that defendant's failure to testify should not be considered against him. Furthermore, the evidence against the defendant was so overwhelming and conclusive that we are convinced beyond a reasonable doubt that the prosecutor's comments had no effect upon the jury's verdict.

■■ Defendant further contends that the prosecutor improperly argued questions of law to the jury.

During closing argument the prosecutor stated that there would be no instruction from the trial court on the defense of justification. She further stated that had there been any evidence of justification, such an instruction would have been given. Defense counsel immediately objected. The trial court told the jury that he would instruct them on the law and to disregard any argument not based upon the evidence. Although we agree that the prosecutor's comments were improper, we do not believe that they were of such a serious and prejudicial nature as to require a reversal of defendant's conviction. See *People v. Burnett* (1975), 35 Ill. App. 3d 109, 341 N.E.2d 86.

■■ Defendant's remaining allegations of error regarding the State's closing argument were waived by his failure to offer timely objections at trial. *People v. Donald* (1963), 29 Ill. 2d 283, 194 N.E.2d 227.

■■ Defendant finally contends that the trial court erred in denying his motion for a continuance of the trial.

The defendant was originally represented by attorney Sheldon Waxman from August 18, 1975, until August 5, 1976. During this period the matter was continued on several occasions at the request of either the defendant, the State, or by agreement of both parties. On August 5, 1976, the trial court granted Waxman leave to withdraw as attorney for defendant and allowed defendant one week to obtain a new attorney. On August 12, 1976, attorney Mel Cahan appeared for defendant and answered ready for trial, but the matter was continued to a final trial date of September 4, 1976. Thereafter, defendant's attorney unsuccessfully conferred with the State's Attorney's office concerning a possible settlement of the matter. On September 9, 1976, attorney Robin Auld, Cahan's associate, informed the State's Attorney's office that on the date set for trial defendant would seek a continuance. When the matter was called for trial on September 21, 1976, Cahan moved for a continuance, stating that he seemed "to be running a fever, probably from an infected tooth." He further stated that he was not adequately prepared for trial on

that date. He has assumed that a continuance would be allowed since as defendant's new attorney he had requested no previous continuances. The State objected, defendant's motion for a continuance was denied, and the matter proceeded to trial that day. Defendant argues that this denial hindered the preparation of his defense.

Our supreme court has stated that "[t]he granting of a continuance to permit preparation for a case, or for the substitution of counsel, necessarily depends upon the particular facts and circumstances surrounding the request, and is a matter resting within the sound judicial discretion of the trial court." (*People v. Solomon* (1962), 24 Ill. 2d 586, 589, 182 N.E.2d 736, 738, *cert. denied* (1962), 371 U.S. 853, 9 L. Ed. 2d 87-88, 83 S. Ct. 94.) The granting of a continuance on the basis of the illness of defendant's counsel is also a matter residing within the discretion of the trial court. (*People v. Wilson* (1975), 31 Ill. App. 3d 1067, 335 N.E.2d 546.) Furthermore, the denial of a continuance does not constitute error unless the denial has embarrassed defendant in the preparation of his defense and has thereby prejudiced him. (*People v. Canaday* (1971), 49 Ill. 2d 416, 275 N.E.2d 356.) Here, attorney Cahan appeared as defendant's counsel 40 days prior to commencement of trial. Under the facts and circumstances of this case, we believe this was ample time in which to adequately prepare for trial. Indeed, at the time of his initial appearance in court on defendant's behalf on August 12, 1976, Cahan answered ready for trial and agreed to a final trial date of September 21, 1976. We do not believe that the presence of settlement negotiations or the anticipation of an agreed disposition should excuse an attorney from preparing for trial. This is especially true where, as here, the matter has been assigned a final trial date of which the attorney is aware and for which he had had adequate opportunity to prepare. Furthermore, the record here demonstrates that defendant's attorney appeared to be completely competent, thoroughly prepared and zealous in his representation of defendant. We cannot say that the trial court abused its discretion in denying defendant's motion for a continuance or that defendant suffered any prejudice as a result of the denial of a continuance.

For the reasons set forth above, we affirm the judgment of the circuit court.

Affirmed.

SULLIVAN, P. J., and WILSON, J., concur.