277

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
KENNETH R. WILSON, Defendant-Appellant.

Fifth District   No. 5—85—0008

Opinion filed April 7, 1986.

Randy E. Blue and Michelle A. Zalisko, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Kenneth R. Boyle, Stephen E. Norris, Raymond F. Buckley, Jr., and Ken R. Torricelli, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE JONES delivered the opinion of the court:
Defendant, Kenneth Wilson, also known as Dan Webber, was convicted in a bench trial of two counts of theft by deception. (Ill. Rev. Stat. 1983, ch. 38, par. 16—1(b)(1)) and one count of applying pesticides without certification in violation of section 5 of the Struc-

tural Pest Control Act (SPCA) (Ill. Rev. Stat. 1983, ch. 111½, par. 2205). The defendant was sentenced to concurrent terms of 3½ years' and three years' imprisonment on the theft convictions and fined $100 on the certification conviction. On appeal the defendant contends that the State failed to prove (1) that he had had the requisite intent to deceive to sustain the theft by deception convictions or (2) that he had applied a chemical controlled by the SPCA so as to be in violation of that Act. We affirm.

At trial Maude Buzzard, a 76-year-old resident of St. Elmo, testified that on April 25, 1984, two men in a truck came to her home. While one of the men, the defendant, remained in the truck, the other, who called himself DeFore, approached Mrs. Buzzard. DeFore stated that he and his companion were the Ace Termite Company and that they wanted to check her house for termites. Mrs. Buzzard's husband was not at home, but when DeFore showed her a paper signed by the city clerk and told her that there would be no charge if they found no termites, Mrs. Buzzard agreed to allow the men to inspect her house for termites. DeFore returned to the truck and conversed with the defendant. The two men then approached Mrs. Buzzard, and DeFore, who had put on coveralls, went around the house to conduct the inspection while the defendant, who introduced himself as Dan Webber, conversed with Mrs. Buzzard.

Returning after a brief period, DeFore informed Mrs. Buzzard, in the defendant's presence, that he had indeed found termites at the east end of the house. The defendant told Mrs. Buzzard that because he and DeFore were already in town with their equipment, the price of an extermination would be $370 but that if they had to come back another day, the price would be $400. Mrs. Buzzard replied that she would not make the decision to hire the men until her husband came home. The defendant then left to go next door to Thelma Smith's house.

When Mrs. Buzzard's husband, 85-year-old Ray Buzzard, returned home, Mrs. Buzzard told him that their house had been inspected for termites, and DeFore showed him the portions of the house where termites had been found. DeFore explained the extermination process to Mr. Buzzard, assuring him that it "[wouldn't] take long." At some point the defendant returned to the Buzzards' house and presented a service contract to Mr. Buzzard. Mr. Buzzard signed the contract and the defendant signed it as Dan Webber. The defendant also presented Mr. Buzzard with a form entitled "Waiver of 'Notice of Cancellation' Rights," indicating that it was necessary for Mr. Buzzard to sign it, and Mr. Buzzard did so. Finally, Mr. Buzzard

wrote out a check at the defendant's instruction for $370, made payable to Don DeFore.

Seventy-eight-year-old Thelma Smith, a widow, testified similarly that on April 25, 1984, a man came to her house and offered a free termite inspection, which she accepted. While this first man conducted the inspection, the defendant came into her house and talked with her about the job. The defendant initially told Mrs. Smith that an extermination would cost $400 but when she told him she could not afford to pay that, he lowered the price to $300.

The first man then returned and informed Mrs. Smith that he had found termites in one corner of the house. The defendant presented Mrs. Smith with a service contract for her signature and directed her to write a check for $300, made payable to Don DeFore. At the defendant's urging, Mrs. Smith also signed a form entitled "Waiver of 'Notice of Cancellation' Rights." Shortly afterwards two workmen arrived and proceeded to spray under and around Mrs. Smith's house from a tank located on the back of their truck.

The defendant and DeFore were arrested on April 26, 1984, and their truck with the pesticide tank and hoses was impounded. On April 27, Mark Vassmer, a sanitarian with the Illinois Department of Public Health, took a sample of the substance contained in the tank on the back of the truck. Vassmer testified that this substance smelled like "chlordane," an insecticide, which was the chemical most commonly used in the pest control industry to kill termites. Vassmer also inspected the Buzzard and Smith houses and found no evidence of termites or termite damage.

Jerry Mack, chief chemist with the Illinois Department of Public Health, testified that he analyzed the chemical solution taken from the tank on the back of the truck and determined that it contained a concentration of chlordane that was ineffective for termite control. Mack testified that the concentration of chlordane in the tank was .05%, while the usual and customary standard for chlordane use was 1%. When asked how such a standard was dictated, Mack replied that it was "set by federal label directions * * * [found] [o]n the chlordane bottle." Mack additionally analyzed a sample taken from a small jug in the back of the truck and determined that it contained a concentration of chlordane that would be insufficient, if mixed with the solution in the tank, to bring the chlordane concentration up to an effective level.

It was stipulated at trial that neither the defendant nor his purported business, Ace Termite and Pest Control, had been licensed to engage in the structural pest control business in Illinois. The defend-

ant, moreover, had not been certified pursuant to section 5 of the SPCA to apply pesticides controlled by that act. It was also stipulated that the defendant had previously pleaded guilty to charges in Douglas County of theft by deception under $300 and engaging in commercial pest control without a license. In exchange for this plea, the court had dismissed two other counts of theft by deception over $300 as well as three counts based on violations of the SPCA, all stemming from activities of the defendant similar to those in the case at bar.

At the close of the evidence the court found the defendant guilty of one count of theft by deception in excess of $300, one count of theft by deception not in excess of $300 and one count of applying pesticides without certification. The latter theft by deception conviction was enhanced to a felony by virtue of the defendant's previous conviction. The defendant was sentenced to concurrent terms of 3½ years' and three years' imprisonment on the theft by deception convictions and ordered to pay a fine of $100 on the certification conviction.

■ On appeal, the defendant contends initially that the evidence was insufficient to sustain the theft by deception convictions where the State failed to prove that he had acted knowingly or with the intent to deceive. Specifically, the defendant asserts that since it was DeFore and not the defendant who inspected the houses in question for termites, the defendant had no actual knowledge that DeFore's statement of termite damage was untrue. The defendant points out that it was DeFore and not himself who told the homeowners that evidence of termites had been found and asserts that his conduct in negotiating and effecting the execution of the service contracts showed him to be no more than an unwitting participant in any attempt to deceive the homeowners. The defendant additionally contends that the evidence was insufficient to prove that he intended to deceive the homeowners by using an inadequate chemical solution in the extermination process, since the testimony regarding the concentration of chlordane in the tank on the defendant's truck failed to show that the solution applied at the houses in question contained the same ratio of chlordane and dilutant as that taken from the tank following the defendant's arrest.

We find no merit in the defendant's arguments that the State failed to prove his intent to deceive because, despite the lack of direct proof of the defendant's intent, evidence of the circumstances surrounding the instant offenses and of the defendant's prior similar offense was sufficient to support an inference of the defendant's

knowledge. It is settled that knowledge may be proved by circumstantial evidence in general (*People v. Sedlacko* (1978), 65 Ill. App. 3d 659, 382 N.E.2d 363) and by evidence of similar offenses in particular (*People v. Delk* (1976), 36 Ill. App. 3d 1027, 345 N.E.2d 197). Evidence of the defendant's previous conviction in Douglas County for theft by deception in operating his pest control business, although introduced for the purpose of enhancing the misdemeanor theft against Thelma Smith to a felony, was properly before the court in a bench trial and, where not limited to that purpose, may be considered by this court in support of the judgment against the defendant (see *City of Rockford v. Maxwell* (1968), 92 Ill. App. 2d 336, 234 N.E.2d 563).

In the instant case, the fact that the defendant had committed similar misconduct in the past served to negate his claim that he was an unwitting participant in the present termite extermination scheme. (*Cf. People v. McKibbins* (1983), 96 Ill. 2d 176, 186, 449 N.E.2d 821, 826 (evidence of defendant's involvement in similar crime served "to dispel any idea that the defendant had been somehow innocently involved in the [crime charged]"); see *People v. Willis* (1983), 119 Ill. App. 3d 34, 456 N.E.2d 165.) Moreover, the defendant's knowing participation in the offenses in question could be inferred from circumstances surrounding the transactions, including the defendant's use of a false name in signing the service contracts; the fact that he had his customers make out their checks to his employee, Don DeFore; his unscrupulous and illegal practice of having the Buzzards and Mrs. Smith sign waivers of their three-day notice-of-cancellation rights; and the operation of his pest control business without a license, an offense for which he had previously been convicted. Thus, while the defendant did not actually conduct the inspections in question, evidence of the defendant's involvement in the transactions was sufficient to show his knowledge that the representations of termite damage were false.

Because we have determined that the defendant's convictions for theft by deception can be sustained on the basis of his knowing misrepresentation of termite damage, it is unnecessary to consider his additional contention that the evidence failed to show that he knowingly applied a chemical solution that was ineffective for termite control. We would note, however, that the State produced evidence that the chemical solution contained in the tank on the defendant's truck on the day after the purported exterminations had taken place was only one-twentieth as strong as that required for effective termite control and could not be brought up to an effective level by the addi-

tion of the small jug of chlordane solution found in the back of the defendant's truck. The defendant introduced no evidence indicating, as suggested on appeal, that the defendant would have added more chlordane to bring the concentration up to an effective level before spraying houses or that the solution in the tank on April 26 was different from that sprayed at the Buzzard and Smith houses the day before. The State is not required to disprove every conceivable theory of innocence in order to convict a defendant on a criminal charge, and we find that the evidence here was sufficient to sustain the defendant's convictions for theft by deception.

■■ The defendant next contends that his conviction for applying pesticides without certification in violation of the SPCA should be reversed because the State failed to prove that chlordane, the chemical used by him in the purported extermination process, was a substance covered by that Act. Section 5 of the SPCA prohibits the application of "any general use or restricted pesticide" (Ill. Rev. Stat. 1983, ch. 111½, par. 2205) by an individual engaged in commercial structural pest control who has not been certified under the Act. The Act defines a "general use pesticide" as

> "any substance *** intended to preventing, destroying, repelling or mitigating any pest, the use of which has been categorized as general under subparagraph (B) of paragraph (1) of subsection (d) of Section 3 of FIFRA [Federal Insecticide, Fungicide, Rodenticide Act (7 U.S.C. sec. 136a(d)(1)(B) (1982))]." (Ill. Rev. Stat. 1983, ch. 111½, par. 2203.22.)

The FIFRA section referred to provides for the classification of a pesticide for general use

> "[i]f the Administrator [of the Environmental Protection Agency (EPA)] determines that the pesticide, when applied in accordance with its directions for use, warnings and cautions and for the uses for which it is registered *** or in accordance with a widespread and commonly recognized practice, will not generally cause unreasonable adverse effects on the environment ***." 7 U.S.C. sec. 136a(d)(1)(B) (1982).

Under the FIFRA provisions governing the registration of pesticides, all pesticides distributed, sold, offered or held for sale, shipped or delivered for shipment, and received or delivered in any State are required to be registered with the Administrator of the EPA. (7 U.S.C. sec. 136a(a) (1982).) As part of the process of registering a pesticide, the Administrator must classify it as being for general or restricted use or both. (7 U.S.C. sec. 136a(d)(1)(A) (1982).) The FIFRA provides guidelines for making this classification and sets

forth applicable packaging and labeling requirements. (7 U.S.C. secs. 136a(d)(1)(A) through (C) (1982); see 7 U.S.C. sec. 136a(c) (1982) (application for registration of pesticide must include information to appear on labeling).) The Administrator publishes a list of pesticides which have been classified as being for restricted use (see 40 C.F.R. sec. 162.31), but does not publish a list of general use pesticides (see 40 C.F.R. sec. 162.1 *et seq.*). Chlordane, the pesticide here at issue, does not appear in the Administrator's list of restricted use pesticides. See 40 C.R.F. sec. 162.31.

While there was no testimony in the instant case as to whether chlordane was classified as a general or restricted use pesticide under the FIFRA, the testimony of the Illinois Department of Public Health employees established that chlordane was a pesticide commonly used in the pest control industry to kill termites. As a pesticide, chlordane was required to be registered with the Administrator of the EPA and to be classified as a general or restricted use pesticide or both. Evidence that it had been so classified was provided by the testimony of Jerry Mack, who referred to the directions for its use found on the Federal label of the chlordane bottle. (See 40 C.F.R. sec. 162.10(j) (all pesticide products required to bear on their labels a statement of use classification as general or restricted use or both).) Since chlordane is not a restricted use pesticide, it must be a general use pesticide and, as such, comes within the scope of the SPCA. We hold, therefore that the defendant was properly convicted of violating section 5 of the SPCA, which prohibits the application of a general use pesticide without certification.

For the reasons stated in this opinion, we affirm the judgment of the circuit court of Fayette County.

Affirmed.

KASSERMAN, P.J., and KARNS, J., concur.