THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EASY LIFE REAL ESTATE, Defendant-Appellant (Easy Life Real Estate *et al.*, Defendants).

First District (5th Division)   No. 86—1459

Opinion filed March 6, 1987.—Rehearing denied April 10, 1987.

SULLIVAN, P.J., specially concurring.

John W. Lally and Neil Beaulieu, both of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Glenn E. Carr, Deputy State's Attorney, and Glenn C. Sechen and Anthony C. Sabbia, Assistant State's Attorneys, of counsel), for the People.

JUSTICE PINCHAM delivered the opinion of the court:

Defendants, Louis J. Prus, Thomas Reich, and Easy Life Real Estate and Management Company, Inc. (Easy Life), were each charged with the offense of solicitation of real estate (Ill. Rev. Stat. 1985, ch. 38, par. 70—51(d)) in that they solicited Raymond O'Donnell, the owner of residential property located at 5122 West Schubert, Chicago, to list or sell such residential property after the defendants had received notice that O'Donnell did not want to list or sell said property.

The three defendants were jointly tried by a jury. At the close of the State's case, each defendant moved for a finding of not guilty. The court granted only the motion of the defendant, Louis Prus. Defendants Reich and Easy Life presented evidence in their defense. The jury acquitted Reich and found Easy Life guilty. The court imposed a fine of $800 upon Easy Life. Easy Life appeals.

The complaint against Easy Life alleged:

"Easy Life Real Estate and Management Co., Inc., a corporation, *** on or about August 16, 1985 at 5122 West Schubert, Chicago, Cook County, Illinois committed the offense of Solicitation of Real Estate in that *** officers of and agents for Easy Life Real Estate and Management Co., Inc., knowingly solicited Raymond H. O'Donnell, the owner of residential property located at 5122 West Schubert, Chicago, Illinois, on August 16, 1985, to sell or list such residential property, after said defendant had notice that said owner did not desire to sell or list said residential property, and that the acts performed by the defendant corporation were performed by defendant corporation authorizing, requesting, commanding and performing certain acts of commission and acts of omission by its officers, board of directors, agents and employees *** acting within the scope of this employment in behalf of such corporation, performed said acts knowingly in violation of Chapter 38 Section 70—51(d) ILLINOIS REVISED STATUTES."

The statute that Easy Life was alleged to have violated (Ill. Rev. Stat. 1985, ch. 38, par. 70—51(d)) provides:

"Prohibition of Solicitation. It shall be unlawful for any person or corporation knowingly:

* * *

(d) To solicit any owner of residential property to sell or list

such residential property at any time after such person or corporation has notice that such owner does not desire to sell such residential property."

The notice that is required in the aforementioned section may be given by the owner personally or by a third party in the owner's name, either in the form of an individual notice or in the form of a *list*. (Ill. Rev. Stat. 1985, ch. 38, par. 70—51(d)(1).) The notice in the form of a *list* is required to meet the specifications set forth in section 1(d)(2) of "An Act to prohibit the solicitation or inducement of sale or purchase of real estate ***" (Act) (Ill. Rev. Stat. 1985, ch. 38, par. 70—51(d)(2)), which provides:

"(2) Such notice shall be explicit as to whether each owner on the notice seeks to avoid both solicitation for listing and sale, or only for listing, or only for sale, as well as the period of time for which any avoidance is desired. The notice shall be dated and either of the following shall apply: (A) each owner shall have signed the notice or (B) the person or entity preparing the notice shall provide an accompanying affidavit to the effect that all the names on the notice are, in fact, genuine as to the identity of the persons listed and that such persons have requested not to be solicited as indicated."

It is provided in section 2(a) of the Act (Ill. Rev. Stat. 1985, ch. 38, par. 70—52(a)) that a violation of the foregoing section is a Class A misdemeanor. Section 3 of the Act (Ill. Rev. Stat. 1985, ch. 38, par. 70—53) provides:

"Whenever a person is convicted of any violation of this Act, the clerk of the court shall report such conviction to the Department of Registration and Education, which *shall* thereupon revoke any certificate of registration as a real estate broker or real estate salesman held by such person." (Emphasis added.)

Prior to trial the assistant State's Attorney filed a motion *in limine* to exclude evidence at trial that the defendants could lose their real estate licenses if they were convicted. The court granted the motion.

The evidence at trial established the following: During 1981 and 1982, the Northwest Neighborhood Federation, a community organization, conducted an antisolicitation real estate drive. Staff members of the federation, along with community volunteers, obtained signatures from homeowners in the northwest area of Chicago who did not want to be solicited for the sale or listing of their property. The homeowner signed a form entitled "Notice Not to Solicit," which read as follows:

"I (We) the undersigned, owner(s) of the residential property located at _____ Chicago, Illinois, do not desire to be and want to avoid being solicited to sell or list for the next five years (5), unless revoked prior to that time in writing. I (We) hereby authorize the Northwest Neighborhood Federation to inform real estate agents, brokers and other persons or corporations soliciting owners of residential property of my (our) request not to be solicited as indicated, as provided by Chapter 38, paragraph 70—51 of the Illinois Revised Statutes.

I (We) understand that my (our) signature on this document does not prevent me (us) from selling my (our) home at any time.

Signature Homeowner(s): _____

Printed Name(s): _____

Address: _____

Chicago, Illinois 60_____

Date: _____"

After collecting the signatures of the property owners on the "Notice Not to Solicit" forms, the federation compiled a list of the names and addresses of the homeowners who had signed the forms. The list was put into booklet form. A sample copy of the "Notice Not to Solicit" form was printed inside the back cover of the booklet. The cover of the booklet read as follows:

"A LIST

of residential property owners who have signed Notice Not to Solicit Forms, in accordance with Chapter 38, paragraph 70—51 of the Illinois Revised Statutes.

Compiled by Northwest
Neighborhood Federation
March 1982"

The inside of the front cover of the booklet contained an introduction which read:

"In accordance with Chapter 38, paragraph 70—51 of the Illinois Revised Statutes, for the purpose of making available to real estate agents, salesmen and brokers, list of residential property owners, who have signed between the date of November 1981 and February 1982 "Notice Not to Solicit forms stating that they '*** do not desire to be and want to avoid being solicited to sell or list for sale such residential property for the next five (5) years, unless revoked prior to that time in writing.' If for any reason clarification of this list is needed, do not hesitate to contact us. Northwest Neighborhood Federation,

4959 W. Belmont, 454-7288"

The booklet contained 99 pages with the names of approximately 35 homeowners listed on each page. Raymond O'Donnell, the complainant in the case at bar, and his property at 5122 West Schubert Avenue, Chicago, were listed on page 74 of the booklet.

Fifty-five copies of the booklet were left on two successive days, August 17 and August 18, 1984, at the Easy Life Real Estate office. The federation staff member who left the booklets requested and received a receipt for delivery of the booklets from the receptionist.

At trial, O'Donnell testified that he had signed a document entitled, "Notice Not to Solicit," which authorized the Northwest Neighborhood Federation to notify real estate agents in the area that O'Donnell did not want to be solicited for listing or sale of his residence located at 5122 West Schubert Avenue, Chicago. O'Donnell stated that on August 16, 1985, he received in the mail a solicitation flyer from Easy Life Real Estate. The mailing also included salesman Thomas Reich's business card.

Terri Pandolfi, community organizer and assistant director of the Northwest Neighborhood Federation, testified that she delivered the booklets together with affidavits to the Easy Life Real Estate office on August 17 and August 18, 1984, and each time Pandolfi spoke with Carmen Perez, who identified herself as a secretary in the Easy Life office. Terri Pandolfi testified that she told Carmen Perez that the purpose of Pandolfi's visit was to serve notice, on behalf of the Northwest Federation, by providing a list of people who did not want to be solicited for the sale or listing of their property. Pandolfi asked Perez for the number of agents in the office. Perez responded, "Fifty-five." Pandolfi told Perez that she would have to get more booklets from the car. Pandolfi returned with 45 books and asked Ms. Perez to give each agent in the Easy Life office a booklet. Pandolfi then asked Perez to sign a receipt. Perez signed the receipt and returned it to Pandolfi. The next day, August 18, 1984, Pandolfi returned to the Easy Life office with 10 additional booklets. Perez accepted the books and signed another receipt.

Dan Nix, a member of the board of directors of the Northwest Neighborhood Federation, testified that he signed an affidavit on May 16, 1983, in which he stated that the booklet contained names and addresses of property owners who did not want to be solicited for the sale or listing of their property. Nix further testified that he went through the booklet and verified that the persons whose names appeared in the booklet had also signed the "Notice Not to Solicit."

Carmen Perez testified that in August 1984 she was a receptionist

for Easy Life Real Estate located at 4101 West North Avenue in Chicago. Perez' office manager was Marlene Morales and Louis Prus was her general manager. Perez said that she remembered someone dropped off the booklets sometime in August.

At the close of the State's case, Louis Prus made a motion for a directed verdict of not guilty. The motion was granted on the ground that the evidence failed to establish that Prus sent out the solicitation to Raymond O'Donnell. The motions of Thomas Reich and Easy Life Real Estate Management Company, Inc., for a directed verdict of not guilty were denied.

The trial continued with testimony from Louis Prus, president and principal broker of Easy Life. Prus testified that he put the Northwest Neighborhood Federation list on a computer tape which he made available to his salespeople. Prus further testified that he announced at three Saturday morning meetings with his brokers that a computerized copy of the Federation's antisolicitation list was available to anyone who planned to work north of North Avenue.

Richard Nelson, an officer of Easy Life Real Estate, testified that he had examined the ''Notice Not to Solicit'' notices which were dated during the time period of August 1981 to February 1982. Nelson testified that all of the notices were signed and contained a property address.

Closing arguments were heard. The jury found Thomas Reich not guilty and found the Easy Life Real Estate and Management Company, Inc., guilty of the solicitation charge. Judgment was entered on the verdict and Easy Life Real Estate and Management Company, Inc., was fined $800 plus court costs.

We note that there were approximately 3,500 names and addresses of property owners in the booklet who were not to be solicited. We also note that from August 17-18, 1984, to the date of the instant trial, a period of 20 months, only one solicitation was sent to a person in the booklet, Raymond O'Donnell, the complainant in the case at bar.

Although Easy Life presents numerous arguments for reversal, because of the following position we take on one of them we decline to rule or discuss the others.

Easy Life contends that the trial court erred in granting the State's motion *in limine* to exclude evidence that Easy Life would lose its license if convicted of the offense. This evidence was admissible and the court erred in excluding it from the jury.

The statute that Easy Life was charged with and found guilty of having violated (Ill. Rev. Stat. 1985, ch. 38, par. 70—51(d)) provides

that it shall be unlawful for a corporation to *"knowingly"* solicit any owner of residential property to sell or list such residential property at anytime after such corporation has notice that such owner does not desire to sell such residential property.

The complaint against Easy Life alleged that Easy Life *"knowingly"* solicited Raymond O'Donnell, the owner of residential property located at 5122 West Schubert, Chicago, after said defendant had notice that said owner did not desire to sell or list said residential property and that the acts performed by the defendant corporation were performed "knowingly."

Section 4—5 of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, pars. 4—5(a), (b)), provides as follows:

"Knowledge. A person knows, or acts knowingly or with knowledge of:

(a) The nature or attendant circumstances of his conduct, described by the statute defining the offense, when he is consciously aware that his conduct is of such nature or that such circumstances exist. Knowledge of a material fact includes awareness of the substantial probability that such fact exists.

(b) The result of his conduct, described by the statute defining the offense, when he is consciously aware that such result is practically certain to be caused by his conduct."

■■ ■ Knowledge, because of its circumstantial nature, is ordinarily proven by circumstantial evidence rather than direct proof. (*People v. Sedlacko* (1978), 65 Ill. App. 3d 659, 663, 382 N.E.2d 363.) While the element of *scienter* must often be proved by circumstantial evidence, it is incumbent upon the State to present such evidence. (*People v. Davis* (1977), 50 Ill. App. 3d 163, 169, 365 N.E.2d 1135.) Conversely, the defendant in the factual posture of this case could rely on the fact that it did not "knowingly" solicit O'Donnell as charged and that the consequences of having done so, *i.e.*, that it could lose its real estate license, was a fact the jury was entitled to hear and consider in determining if the corporate acts of soliciting O'Donnell were knowingly committed. As previously stated, there were approximately 3,500 addresses and property owners listed in the booklet. Over a period of 20 months, defendant corporation sent only one solicitation notice to only one of the property owners listed in the booklet. It was incumbent upon the State to prove that the corporation knowingly solicited O'Donnell. The defendant corporation had the right to refute and dispute such proof or to establish that it did not knowingly solicit O'Donnell. Knowledge of the severe consequences of solicitation was an element which would tend to establish that the solicitation was not

knowingly committed. Solicitation of an owner of residential property to sell or list his residence is not a criminal offense *per se*. It becomes a criminal offense only after there has been notice that the owner does not desire to sell the property, and the notice must be in compliance with sections 1(d)(1), (2) and (3) (Ill. Rev. Stat. 1985, ch. 38, par. 70—51(d)(1), (2), (3)).

We conclude that the trial court erred in granting the motion *in limine* to exclude evidence that Easy Life's real estate license would be revoked upon conviction of the alleged offense. Therefore we reverse the judgment and remand the cause for a retrial.

Reversed and remanded.

MURRAY, J., concurs.

PRESIDING JUSTICE SULLIVAN, specially concurring:

I agree with the majority that under the circumstances here it was error to exclude the evidence in question but I would reverse without the direction of a new trial because the State did not establish Easy Life's guilt beyond a reasonable doubt. In fact, there is no evidence that Easy Life knowingly solicited Raymond H. O'Donnell.

Easy Life, Louis J. Prus, and Thomas Reich were charged by complaint with the knowing solicitation of Raymond H. O'Donnell to sell his residential property and only two witnesses testified for the State concerning this alleged solicitation, O'Donnell and Sylvia Oliva.

O'Donnell testified only that he received by mail a solicitation flier which was received in evidence as exhibit No. 3. While he did not testify who sent the flier or what was solicited in it, the envelope in which it came bore the name "THE EASY LIFE REAL ESTATE SYSTEM" and the flier essentially was a brochure relating the history and the nature of the activities of Easy Life System. Added to the brochure in different type and over the signature "Tom Reich" was the following:

> "I have someone who wants to live in your area. If you would like to sell or buy a home please give me a call. Thank you."

This addition is the only portion of the flier which contained any solicitation language.

Sylvia Oliva stated that she was one of two secretaries who worked for Reich; that they were paid by him; that he gave her and his other secretary brochures similar to exhibit No. 3 (the solicitation flier in question) for mailing to names and addresses given by him; that she and the other secretary were directed to and did sign his

name to the brochures; that they were both told not to mail the brochures to any name on the nonsolicitation list which Reich gave them; that Raymond O'Donnell's name was on that list; that she and Reich's other secretary tried their best not to send the brochures to any of the names on that list; and that Reich never sent out any brochures himself. She specifically stated that she and the other secretary worked for Reich and not for Easy Life or Prus.

When the State rested, the court directed a verdict as to Prus on the basis that there was no evidence that he mailed or had knowledge that the flier was sent to O'Donnell. During the trial which proceeded as to Reich and Easy Life, Prus, who was president of the latter, testified that Reich was an independent contractor working under a contract with Easy Life; that Oliva and another secretary worked for Reich and not for Easy Life or Prus.

The jury then found Reich not guilty, but Easy Life was found guilty. However, there appears to be nothing in the record to support the verdict against Easy Life. While the State justifies it on the basis that "the corporation may have been found to have committed the acts and omissions by other agents and employees besides Thomas Reich in order to support the elements of the offense against the company," the State did not provide nor does the record reveal the names of such other agents and employees or any acts and omissions that may have been committed by any such persons. In fact, there is nothing in the record to indicate that any officer, agent, or employee of Easy Life knew that the solicitation in question was mailed to O'Donnell. The record discloses only that at Reich's request one of his secretaries signed his name to a solicitation flier and mailed it to O'Donnell and that Reich was acting as an independent contractor acting on his own behalf in directing that the flier be sent.

Since both Reich and Prus were found not to have knowingly solicited O'Donnell and, because there is nothing in the record giving any indication that Easy Life had anything to do with the mailing to O'Donnell, proof of its guilt beyond a reasonable doubt is lacking, and, in light thereof, a retrial should not be ordered.

For the reasons stated I would reverse the judgment.