THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
WILLIAM WHOOPER, Defendant-Appellant.

First District (4th Division)   No. 78-812

Opinion filed November 21, 1979.

James J. Doherty, Public Defender, of Chicago (Ira Churgin, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Joan S. Cherry, and Pamela J. Moran, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE ROMITI delivered the opinion of the court:

William Whooper (defendant), Walter Whooper, and Cleveland Jordan were jointly charged by information with two counts of robbery. On the State's motion an order of *nolle prosequi* as to Jordan was entered prior to trial. Following a bench trial Walter Whooper was found not guilty and defendant was found guilty and sentenced to one to two years in the Illinois State Penitentiary.

The sole issue raised on appeal by defendant is whether his right to the effective assistance of counsel was abridged because his trial attorney also represented a co-defendant with hostile and conflicting interests.

We affirm.

Defendant and his brother, Walter Whooper, were initially represented solely by Cecil Smith. However, apparently because of illness of Smith, the court appointed Thomas Shannon to represent them prior

to trial. Shannon had represented Jordan until the order of *nolle prosequi* as to Jordan was entered. The record establishes that Smith was present during trial and was consulted by Shannon, but Shannon was the only actively participating attorney on behalf of the Whooper brothers.

At trial Dora Vanos testified for the State that on April 11, 1977, at approximately 1:30 a.m. she and her son Thomas were walking west on the south side of Bradley Place in Chicago. As they approached the entrance to an alley a car also traveling west on Bradley turned in front of them into the alley and stopped. The driver of the car got out and stood by a lamp post. As the witness and her son crossed the alley she saw two other men exit the car. The men walked past her and her son and then turned around and faced them. In court she identified these men as defendant and Walter Whooper. Walter approached her and defendant approached her son. Both said they were armed and wanted money. Walter forced Mrs. Vanos to the ground, took her purse, and struck her with his fist. Defendant pushed her son and demanded his money. Thomas complied, asking that they leave his mother alone because she had a heart condition. Defendant punched him on the side of the head, knocking him to the ground and knocking his glasses off. Both men then ran back into the alley. Mrs. Vanos heard a shot fired and did not go into the alley immediately. She called out for someone to call the police and then she and her son entered the alley, where they found that the car had crashed into a lamp post. Mrs. Vanos recovered her purse at the scene.

Mrs. Vanos described the lighting conditions at the scene as very good. A street lamp shone into the alley and there were two lights illuminated over a doorway to the building in front of which she was robbed. At the time of the robbery Walter had a beard and was wearing a beige suit, dark glasses and a cap. Defendant was wearing a red sport coat, dark pants, and a floppy hat. The driver of the car had a beard and wore a beige checked suit.

Later on the morning of the robbery Mrs. Vanos viewed a lineup and identified the driver of the car. That afternoon she viewed a second lineup and identified Walter Whooper and the defendant as the men who had robbed her. She also testified that the entire robbery took 10 to 15 minutes.

Thomas Vanos testified to essentially the same facts concerning the robbery as his mother. He described Walter as wearing a tan leisure suit and a hat. Defendant wore a hat and a red jacket. He did not get a good look at the driver, whom he described as a tall, thin black man with no beard. Later that morning he viewed a lineup but identified no one. That afternoon he viewed a second lineup and identified a total of three persons. However, he then determined he was mistaken about one person and ultimately he only identified two people, defendant and Walter

Whooper. On cross-examination Thomas indicated that though he could not clearly recall the manner in which this occurred, it was possible that he first identified two men, then realized he was mistaken as to one and identified the third man. He also identified defendant and Walter in court as the men who had robbed him, and testified that they were not in the morning lineup he had viewed.[1]

Also testifying for the State was Arnell Davis, the wife of Cleveland Jordan. She was the owner of the car found in the alley following the robbery. The last time she saw the car was when she and her son drove it to a party at her mother's home about 1 a.m. on April 10, 1977, the day before the robbery. She left the party at about 6 a.m. on the 10th; her son, Fred Smith, had left earlier with the car. On cross-examination she stated that her brother, Terry Aaron, never drove her car. She also stated she had not seen him between 1 and 2 a.m. on April 11, 1977.

The first defense witness was Burns Kelly. At 6:15 p.m. on April 10, 1977, he and a number of other people drove from his apartment in three cars. Defendant rode with Kelly, Walter Whooper was the passenger in a car driven by a person named Larry, and Terry Aaron drove a third car with Anthony Brown as a passenger. After stopping at several locations, the three cars arrived at the home of Carl Burrds at 927 W. Wilson in Chicago. By this time defendant and Walter were both riding with Kelly. Kelly testified that the car driven by Terry Aaron was the same car identified by Arnell Davis as belonging to her. Kelly and Walter left the apartment at about 10:30 p.m. and returned to Kelly's home where they remained until about 2:30 or 3 a.m. on April 11. At that time they went to the home of Walter Whooper. When they had left Burrds' apartment Aaron, Brown, and the defendant remained there. The car driven by Aaron was also still there. The next time Kelly saw the defendant was at 3:15 the next morning.

Testifying in his own behalf, Walter Whooper gave essentially the same account of his activities on the night of the robbery as Burns Kelly had related. He too testified that he and Kelly left Aaron, Brown, and the defendant at Burrds' home and that the car driven by Aaron, the same one identified by Kelly and Arnell Davis, was still there. On cross-examination Walter testified that the next time he saw defendant was at his home at 3:30 a.m. April 11. Defendant came in with Terry Aaron. Over defense objection the State elicited the fact that defendant told Walter then that the green 1970 Ford (which Walter had described as the car driven by Aaron) had hit a pole and Terry left it there. He also told Walter that after the car hit the pole he came home. Walter could not recall that defendant told him anything else.

---

[1] Subsequent testimony established that the third person mistakenly identified by Thomas Vanos was Terry Aaron.

Defendant also testified to essentially the same events up to the point when Walter and Kelly left Burrds' home. Defendant identified the car driven by Terry Aaron as the same one identified by the previous witnesses. At about 11:30 or 12 that night defendant, Aaron, and Brown left in that car with Aaron driving, Brown beside him and defendant in the back seat. After about 45 minutes to an hour they stopped in an alley somewhere on the north side of Chicago. Aaron and Brown got out of the car and walked back towards the sidewalk. After about five minutes defendant, who had lost sight of them and did not know where they were going, got out and stood by the passenger side of the car. When he next saw his companions they were walking fast back to the car. They all got in and Aaron started the car. As they pulled away defendant heard a shot and they hit a light post. After Aaron unsuccessfully attempted to start the car they all walked to a main street where they took a cab. Defendant first learned of the robbery when he heard them discuss it in the cab. Brown got out at Wabash, Adams or Jackson and defendant and Aaron proceeded to 1900 West Washington, arriving there at 3:30 a.m.

On cross-examination defendant testified he was not told why the car was stopping in the alley, but he was not surprised when it did so. He did not ask where Aaron and Brown were going nor did they tell him. He heard a scream when he got out of the car to await their return. When they did return he did not see them holding anything. When they left the car he was just following them. They walked fast but did not run.

The final defense witness was Marc Tobias. On April 11, 1977, he was an Assistant State's Attorney and was present at the lineup viewed by Dora and Thomas Vanos. Without objection by the State Tobias referred to notes he made in a felony review folder on the case. Defense counsel elicited the fact that those notes indicated Thomas Vanos only identified one person in the lineup. On cross-examination the State elicited the name of this individual, Walter Whooper. Those notes also indicated that Thomas "tentatively attempted" to identify other persons in the lineup.

In rebuttal the State presented the testimony of a woman who lived near the scene of the robbery at the time it occurred. At 1:30 that morning she heard a car come tearing down the alley with screeching tires and then heard a thud. When she looked into the alley she saw three men getting out of a dark car that was against a post. As the driver exited she saw a dark object fall and its contents spill out. One of the passengers said "let's go." The driver said, "Wait I'm going to get my keys" and then all three men ran together down the alley. She went into the alley and found what looked like a purse and identification cards.

After closing arguments the trial court found Walter Whooper not guilty and defendant guilty on both counts of robbery.

■■ For the first time on appeal defendant asserts that his interests were hostile to those of his co-defendant, Walter Whooper, and, therefore, his representation by the same counsel representing Walter denied him effective assistance of counsel. This issue was never raised before or during trial. Indeed, the record establishes that defendant and his brother were initially represented jointly by nonappointed counsel. And though the trial court subsequently appointed a different attorney to represent them, there was no request at that time for separate counsel. Defendant also filed a written motion for a new trial after his conviction in which no mention was made of this issue. Ordinarily the failure to raise an issue in the written motion for a new trial constitutes a waiver of that issue on appeal. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) Nor will plain error be considered as a means of circumventing this rule unless it is clear from the record that an error affecting substantial rights was committed. (*People v. Precup* (1978), 72 Ill. 2d 7, 382 N.E.2d 227.) Upon review of this record we find no such error, nor do we find any actual conflict between the defendant and his co-defendant.

■■ The right to effective assistance of counsel includes the right to have the undivided loyalty of counsel. (*People v. Coslet* (1977), 67 Ill. 2d 127, 364 N.E.2d 67.) But a violation of this right will not be found merely because several defendants are jointly represented by one attorney. (*Holloway v. Arkansas* (1978), 435 U.S. 475, 55 L. Ed. 2d 426, 98 S. Ct. 1173; *People v. Vriner* (1978), 74 Ill. 2d 329, 385 N.E.2d 671, *cert. denied* (1979), ___ U.S. ___, 61 L. Ed. 2d 296, 99 S. Ct. 2858.) Defendant must establish that there was an actual conflict of interest at trial. (*Vriner; People v. Berland* (1978), 74 Ill. 2d 286, 385 N.E.2d 649.) And of direct relevance to this appeal is the rule that it will not suffice to base a showing of a conflict upon mere speculation about what might otherwise have occurred at trial. *People v. Berland; People v. Doyle* (1978), 61 Ill. App. 3d 571, 377 N.E.2d 1093.

■■ In *Berland* the court rejected defendants' argument that their joint representation by one attorney may have precluded the argument by separate counsel that the other defendant was solely responsible for the arson at issue. The court noted that in fact at trial one defendant entered a simple denial of guilt and the other presented an alibi defense, so that there was no actual conflict in their defenses. In *Doyle* the two defendants were charged with rape. One defendant testified that there was consent while also placing his co-defendant at the scene; the co-defendant did not testify. This court found no actual conflict in the cause, rejecting the contention that the co-defendant might have wished to assert an alibi as speculative even though the State introduced evidence that defendant had asserted such an alibi to the police after his arrest. In this cause both

defendants, faced with two eyewitness identifications by their alleged victims, chose to testify. Defendant admitted that he was at the scene, but denied any participation or concurrent knowledge of the robberies. His co-defendant presented an alibi defense and was supported in that alibi by the defendant to the extent that the defendant's testimony indicated the co-defendant was not present at the robbery. Similarly, defendant's testimony as to the presence of the two men he claimed performed the robbery was corroborated to some extent by the testimony of the co-defendant and Burns Kelly that they left defendant with these men earlier that evening. Defendant chooses to view this testimony as only implicating him in the crime, but it can only be so viewed if we ignore his testimony explaining his presence with these men, and speculate that defendant might have chosen not to testify and explain his presence at the scene. This becomes plausible only because on hindsight it is apparent that the trial judge was not sufficiently persuaded by the eyewitness testimony; as defendant notes, the court in its ruling specifically referred to the testimony of the defendant which also placed him at the scene. But a finding of a conflict cannot be based on hindsight concerning possible alternative strategies at trial. (*People v. Gregory* (1979), 73 Ill. App. 3d 127, 391 N.E.2d 779.) Defense counsel may well have felt that the best strategy at trial for the defendant was to present an innocent construction of his presence in the face of strong eyewitness identification. Obviously, his co-defendant had available credible alibi testimony. The testimony of the defendant did not in fact conflict with that of the other defense witnesses. Because he has failed to establish any actual conflict, we find no error in his representation by the same attorney as his co-defendant.

The judgment of the trial court is affirmed.

Affirmed.

JIGANTI, P. J., and JOHNSON, J., concur.