THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICHARD BAKER, Defendant-Appellant.

First District (1st Division)    No. 78-1667

Opinion filed March 10, 1980.

Ralph Ruebner and Patricia Unsinn, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Myra J. Brown, and William Gamboney, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:

After a jury trial, Richard Baker was found guilty of murder and sentenced to serve 30 years in the Illinois Department of Corrections. On appeal, Baker contends that (1) the prosecution improperly commented on the defendant's exercise of his fifth and sixth amendment rights; (2) he was denied due process where the trial court refused an accomplice witness instruction; and (3) the State failed to prove Baker's guilt beyond a reasonable doubt.

We affirm.

On June 6, 1975, James Frantz was shot and killed. On June 8, 1975, Richard Baker was arrested in connection with the murder and released on bond. The People filed a motion on November 18, 1976, requesting the court to order Baker to appear in a lineup. This motion was withdrawn after the State received a letter from defense counsel opposing the motion.

Michael Flowers, Kelly White, James Duffy, Floyd Wolski, and Essie Washington were among the witnesses called by the prosecution.

Michael Flowers testified that he had known Baker for approximately one year before the shooting. He stated that at 6 p.m. on June 6, 1975, he arrived at the home of Kelly White. Richard Baker and Jesse Stubblefield were also there. They stayed at White's house for 1½ hours, during which time they spoke of buying marijuana and examined Baker's revolver. When they left, they walked in the direction of Bellwood, Illinois, although they were not going to any specific place. When they arrived at the corner of Randolph Street and 23d Avenue in Bellwood, Flowers recognized the victim James Frantz in a group of people. Flowers knew that marijuana was sold there and asked Frantz if he had any to sell. Although Flowers was angry because Frantz would not sell him any marijuana, Flowers had no intention of injuring the victim. After Flowers heard a shot and saw Frantz grab his chest, he turned and saw Baker firing at Frantz. Flowers was stopped by police the next day and gave them a written statement regarding the events of June 6, 1975.

Kelly White testified that Baker, Flowers and Stubblefield were at his house on June 6, 1975, drinking wine and talking. When it was dark, they decided to leave White's house. When they reached Randolph Street and 23d Avenue, Flowers talked to Frantz about buying marijuana. During this time, White heard several shots and saw Frantz grab his chest. He did not see who fired the shots. White ran home where Baker, who arrived shortly thereafter, stated that he had shot Frantz. White was also taken into custody by police the following day, and gave a statement to police.

James Duffy, a friend of the victim, stated that at 9 p.m. on the evening in question he was sitting on a curb in front of Floyd Wolski's home talking to two girls in a parked car when four black men walked

around the corner towards the house. Two of them approached the car and asked for a "joint" or cigarettes. One of the men carried an old wooden slat. After they rejoined the others on the sidewalk, Frantz began talking to one of the men. Duffy then heard a sound which he believed to be an exploding firecracker. He turned and saw Frantz grab his chest and an individual whom he identified as Richard Baker pointing a gun at Frantz. On June 8, 1975, Duffy viewed a lineup at the Maywood police station, but identified no one. Baker was not present at the lineup. On May 3, 1977, he viewed a photographic display at the Bellwood police station and identified Baker as the assailant.

Floyd Wolski lived at the home where the shooting took place and testified that at approximately 9:30 p.m. on June 6, 1975, he saw four black men turn the corner on 23d from Randolph Street. One of the men carried a brown bag in back of him with a shotgun or rifle protruding from it. After Frantz and Flowers conversed, Wolski saw Baker fire a gun. Wolski gave a description of the gunman to police and attended a lineup two days later. He identified Flowers as the person who talked to Frantz. Baker was not present at the lineup. On May 3, 1977, he viewed a photographic display and identified Baker as the gunman.

Essie Washington, a cab driver for J & D Cab Company on June 6, 1975, testified that on this day, he picked up defendant at White's house at 10 p.m. Washington was contacted by police the next day and gave them a statement. He also viewed 16 or 17 photographs and identified Baker as his passenger.

Richard Baker testified on his own behalf and stated that he met Jesse Stubblefield and Michael Flowers after work on June 6, 1975, and went to White's house at about 4 p.m. At 5 or 5:30 p.m. they took a cab to Baker's apartment in Berwyn where Baker picked up a revolver and rifle which White wished to purchase. They returned to White's house. White gave Baker $25 for the guns and said he was going to shoot dice that evening. Baker then went to his mother's house where he helped move some furniture. He returned home and later went to a basketball court at 17th Street and Madison Avenue where he ate, drank and played basketball until about 9:30 p.m. He returned to White's house and White returned the revolver. He then took a cab back to his apartment.

Baker further testified that he was arrested at home on June 8, 1975. He heard a knock at the door and opened it slightly. The police put a shotgun through the opening and demanded that Baker open the door. They handcuffed him, struck him several times, and did not tell him that he was under arrest until they were in the apartment for several minutes.

■■ Defendant first contends that the trial court erred by allowing the State to cross-examine him regarding his failure to appear in a lineup and his receipt of *Miranda* warnings. He also cites as error the trial court's

refusal to give an instruction on accomplice testimony which was tendered by defendant. However, none of these matters are set forth in the defendant's motion for a new trial. The Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 116—1) provides that a motion for a new trial shall be in writing and shall state the grounds therefor. Failure to raise an issue in the written motion constitutes a waiver of such issue and it cannot later be alleged as a ground for reversal on review. *People v. Precup* (1978), 73 Ill. 2d 7, 382 N.E.2d 227; *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.

Even assuming that these issues were preserved for review, we cannot agree with defendant's contentions.

■■ First, defendant's privilege against self-incrimination was not violated when the State cross-examined him regarding his receipt of *Miranda* warnings. The cross-examination in both instances was limited in that the prosecution merely adduced that defendant had signed a statement containing his *Miranda* warnings in response to defendant's testimony during direct examination that he had not been questioned by the police. Defendant was not asked to explain his reasons for not informing the police of his alibi, and consequently the prosecution did not use his silence to impeach the exculpatory version of events which defendant testified to at trial. Because of the limited nature of this cross-examination, we note that *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240, cited by defendant, is inapplicable.

■■ Secondly, the prosecution's cross-examination of defendant regarding his failure to appear in a lineup was not error. Upon defendant's objection to this line of questioning, the trial court heard arguments from both the prosecution and defense and thereafter permitted a limited examination of defendant regarding this matter. The extent of cross-examination of the defendant rests within the sound discretion of the trial court and should not be disturbed absent an abuse of discretion resulting in manifest prejudice to the defendant. (*People v. Williams* (1977), 66 Ill. 2d 478, 363 N.E.2d 801.) We find no abuse of discretion by the trial court since the testimony elicited by the prosecution on cross-examination was invited by defendant. More specifically, the prosecution only established that it had requested that defendant appear in a lineup and that defendant had objected in response to his testimony during direct examination that he had never been placed in a lineup.

Defendant also contends that the trial court erred by refusing to submit an accomplice witness instruction. He argues that in the absence of such instruction, the jury was unable to fairly evaluate and weigh the testimony of White and Flowers.

■■ An accomplice has been defined as "one who knowingly, voluntarily, and with common intent with the principal offender unites in the

commission of a crime." (*People v. Robinson* (1974), 59 Ill. 2d 184, 190, 319 N.E.2d 772, 776, quoting from *People v. Hrdlicka* (1931), 344 Ill. 211, 221, 176 N.E. 308, 313.) In light of this definition, we agree with the trial court's determination that White and Flowers did not facilitate the commission of the offense. When the four individuals left White's house, they were not going to any specific place. Moreover, there is no testimony indicating that they knew of or planned to engage in any illegal and violent acts, and there is little testimony from which such knowledge or intent could be inferred.

Defendant lastly argues that he was not proved guilty beyond a reasonable doubt because the prosecution failed to produce reliable evidence identifying him as the person who shot James Frantz. Baker states that the testimony of White and Flowers is unreliable because they were accomplice witnesses who expected benefits from the State in return for their testimony. Also their testimony was contradicted by the testimony of Wolski and Duffy. Defendant further argues that his conviction cannot rest on the identification testimony of Wolski and Duffy because neither person had an adequate opportunity to observe the gunman. Their identification of defendant two years after the shooting was unreliable because of the lapse of time between the shooting and the time of identification.

It is the function of the jury to determine the credibility of the witnesses, to weigh the evidence and any reasonable inferences therefrom and to resolve any conflicts in the evidence. *People v. Jones* (1975), 60 Ill. 2d 300, 325 N.E.2d 601, citing *People v. Stringer* (1972), 52 Ill. 2d 564, 289 N.E.2d 631.

The general rule is that a jury's decision will not be disturbed on review unless the evidence is so unreasonable, improbable, or unsatisfactory that a reasonable doubt of defendant's guilt is raised. *People v. Chapman* (1977), 49 Ill. App. 3d 553, 364 N.E.2d 577.

Here, the jury had the opportunity to assess the credibility of White and Flowers in terms of their relationship to the defendant and their criminal backgrounds. The prosecution informed the jury of the witnesses' criminal backgrounds both in opening and closing arguments and instructed them to assess the witnesses' credibility and reliability. Both witnesses also testified that they had been convicted of burglary.

■■ Furthermore, the State produced other eyewitnesses, namely Duffy and Wolski, who testified that they saw defendant fire the shots. Both were within feet of the victim and the defendant and made positive identifications at trial. The fact that they did not identify Baker until two years after the shooting affects only the weight given to the identification by the jury. *People v. Rodgers* (1972), 53 Ill. 2d 207, 290 N.E.2d 251.

■■ The jury, after weighing the credibility of the witnesses and the

reliability of their testimony, chose to find defendant guilty. Because of the number of witnesses who identified the defendant and the testimony and evidence given at trial, we will not substitute our judgment for that of the jury.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

O'CONNOR and CAMPBELL, JJ., concur.