THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM SMITH *et al.*, Defendants-Appellants.

First District (5th Division)    No. 78-1829

Opinion filed September 12, 1980.

James J. Doherty, Public Defender, of Chicago (R. H. R. Silvertrust and John Thomas Moran, Jr., Assistant Public Defenders, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Thomas J. Leanse, and Thomas A. Gibbons, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

Following a jury trial, defendants were convicted of burglary (Ill. Rev. Stat. 1975, ch. 38, par. 19—1) and possession of burglary tools (Ill. Rev. Stat. 1975, ch. 38, par. 19—2). Defendant Smith was sentenced to a prison term of eight years for burglary and defendant Gillespie to a term of three years. Both defendants were sentenced to prison terms of one to three years for possession of burglary tools. On appeal, defendants present these arguments: (1) the trial court erred in denying their motions for a substitution of judges; (2) the trial court erred denying their motion in limine; (3) they were deprived of their right to counsel; (4) they were deprived of their constitutional rights to present a defense; (5) the prosecutor's misconduct deprived them of their right to a fair trial and (6) they were not proven guilty beyond a reasonable doubt. We affirm the trial court.

Defendants were arrested on April 11, 1977, and charged with burglary and possession of burglary tools. A trial date had been set for April 10, 1978. On that date, Anthony B. Eben, Jr., defendants' counsel, was not present but his legal assistant appeared informing the court that Eben was about to start trial elsewhere and requesting a continuance.

Judge Robert L. Massey informed the legal assistant the matter was set with subpoenas for trial. The court contacted Eben, and he informed the court that he was about to conduct voir dire in another courtroom. The

court replied that he was required to file an affidavit stating that he was on trial elsewhere.

The court then requested the prosecution to verify that Eben was on trial elsewhere. It was ascertained that he would go to trial in the other case within the next three days. The court then ruled that he was on trial in the present case and should proceed. Eben stated the defense was not ready to proceed. He indicated there was a bill of particulars outstanding as well as a subpoena which had not been complied with by John Lapka, owner of the burglarized jewelry store.

The court responded that Eben took this case over in October 1977 and had demanded trial on December 14, 1977. The matter was set for subpoenas on January 26, 1978, but continued to March 13, 1978, when a motion for a bill of particulars was filed. The matter was continued again to April 10, when the defendants filed a petition to reconsider orders denying their request for insurance claims. The court pointed out to Eben that he had failed to notify either the court or the State's Attorney's office that he was not ready to proceed. He indicated the defense had changed its theory of the case, and there were new witnesses involved. The court then told him that he should have notified the State prior to the date of trial. Eben stated he would not proceed, whereupon he was held in contempt and taken into custody.

The State checked on the status of the other trial and discovered that the matter was continued on motion of the People until April 15. The court stated that since Eben was not on trial elsewhere, he was on trial in the present case. Eben indicated his clients had revoked his authority to act for them and therefore requested leave to withdraw. The court informed him that he was on trial. He then requested one week to prepare for trial, which was denied. The court ordered him held in custody as long as he refused to proceed to trial. When the court reconvened that afternoon, his attorney, Frank Oliver, appeared and requested a hearing on the contempt matter. The court indicated that the matter before it was the present case. Eben again stated that he had no authority to act for defendants. Defendants informed the court that they did not want him to represent them if he was not ready.

Eben indicated that defendants had a motion for substitution of judges. He then stated that the defense's discovery motion had not been complied with by the State, and they had not received their bill of particulars previously filed. Defense counsel went on to argue that there had never been a hearing on the motion for reconsideration related to notices of insurance claims. These claims, defendants asserted, would have mitigated their guilt. Therefore, defendants claimed that they were not ready to proceed to trial and that forcing them to proceed under these circumstances was prejudicial. The court denied the motion.

The court indicated Eben was the attorney of record in the case. It noted that when Anthony Pacelli, the previous attorney, withdrew, the defendants were told whoever they next retained would have to bring the case to its conclusion. Therefore, Eben knew he should be ready for trial when he demanded such on December 14, 1977.

Defendants asked about their bill of particulars and witnesses. The State responded that the question raised in the bill of particulars concerning the exact location of the police officers when they observed defendants on the date in question was answered in its answer to discovery filed in June 1977. The court stated that defendants had one or two days to get their witnesses before the State would be finished with its case. Defendant Smith also inquired about the subpoena sent to Lapka regarding insurance claims. The State responded that no insurance claims were made for the property since it was recovered. Police inventory sheets were also requested, which the State indicated would be tendered either that day or the next.

Defendants submitted a motion for a mistrial before the proceedings began on April 11, 1978. Eben told the court he was not responsible for it, but was acting "as sort of an interpreter, to in effect relate to the court what their feelings are as far as they're concerned." The court reiterated that Eben was the attorney of record. Defendants stated again that they did not want him to represent them because they were not prepared for trial. The court denied the motion for a mistrial.

Defendant Smith requested in a motion in limine that his previous convictions, which he alleged to be over 10 years old, not be used against him. The State indicated that there was one conviction which was within eight years from defendant's release from prison which would be used for impeachment purposes if it became relevant. Eben stated that the prejudicial effect of allowing this conviction outweighed any probative value. The court determined that the jury could weigh the conviction carefully in hearing all the evidence to determine Smith's credibility as a witness, whereupon the court denied defendant Smith's motion in limine.

Voir dire was completed and the court requested counsel to make opening statements. Eben informed the jury that he was ordered by the trial judge to represent the defendants against their will, whereupon the judge admonished him to confine his comments to the opening statement. He then told the jury that the evidence would show he had no authority to act on behalf of defendants.

Officer Paul Nielson testified that on April 11, 1977, at 3:12 a.m. he and his partner, Officer James Bednarkiewicz, were in a marked car in the area of 47th Street and Marshfield when they heard the sound of glass breaking. He observed defendants standing in front of Lapka's Jewelry Store. Smith was walking towards a vehicle with a small box in his hand and Gillespie had his hand inside the security gate and window of the store. When the

police car approached the car, Smith dropped the box he was carrying and then began to throw out other boxes inside the car. He was placed under arrest and the boxes of jewelry were recovered from the sidewalk and inside the car. The store owner identified the jewelry as his, and it was turned over to him. On cross-examination, Officer Nielson stated that when he heard the glass break, he was about three-quarters of a block away from the jewelry store.

Frank Oliver, Eben's attorney, appeared in court after Officer Nielson finished testifying and requested an immediate hearing on Eben's contempt charge. The court stated that Eben had purged himself from the contempt charge since he was participating in the trial.

Defendants filed a motion for a mistrial on the ground that the court held their counsel in contempt because he said he would not proceed to trial. They also filed their amended answer to the State's motion for pretrial discovery. The court stated for the record the sequence of events leading to Eben's contempt charge, but noted, however, that he had participated in the trial. The court indicated that there was no hostility or any prejudice directed at defendants and so accordingly denied their motion for a mistrial.

Defendants then wanted to present Lapka with a subpoena that requested an inventory list of lighters offered for sale between April 1, 1977, and June 1, 1977. The prosecution objected, indicating there had been no showing of relevance. The court ruled that Lapka would not be compelled to bring in any documents until he was on cross-examination.

Officer Bednarkiewicz testified that as he approached the jewelry store, he saw defendants in front of the jewelry store. He pulled the squad car behind defendants' open convertible car and saw Smith throwing items out of the back seat. Gillespie began walking away and dropped something to the ground. The officers placed both defendants under arrest and began picking up the items from the sidewalk and the back seat of the car. Officer Bednarkiewicz further testified that he found a tire jack in the back seat of the vehicle. On cross-examination, he stated that prior to turning on 47th Street, they had stopped at a nearby gas station to use the restroom. He indicated that he did not mention the tire jack in his police report.

John Lapka, the jewelry store owner, next testified that he lived in the back of his store. He was awakened by the telephone around 3:30 a.m. and saw his nephew and the police through the store's front window. When he went outside, his nephew pointed to the broken window. Subsequently he went to the police station and identified the items taken from the store. On cross-examination, Lapka testified that Gillespie and his family with another fellow came to the store about a week after the burglary.

Eben decided to withdraw the subpoena of Lapka's lighter inventory

as the information he requested had been elicited on cross-examination. The State rested their case, whereupon defendants moved for a directed verdict, which was denied.

The next day, Eben told the court that a Ray Proczak had come to his office approximately one month before with defendants and implicated a Virgil Brandt in the burglary. He then moved for a suspension of the trial pending an investigation by the State's Attorney. The court denied this motion.

Eben called Smith to testify and began by asking him if he had been ordered not to discuss their relationship before the jury. The court admonished him to refrain from further discussion of this and warned him he would be held in contempt if he continued to do so.

Smith testified he had been convicted of armed robbery in 1966, violated parole in 1968, and was sentenced to 3½ years. He was released in 1970 and has had no further convictions. He further testified that on April 10, 1977, he and Gillespie had been drinking and driving around for some time. He drove to a gas station to get some gas and cigarettes. He stated that the attendant wanted to know if he had a jack, since two ladies had a car with a flat tire. He helped the attendant change the tire and threw the jack in the back seat of the car since the trunk lock was difficult to open. After leaving the gas station, he and Gillespie drove down 47th Street towards Smith's sister's house. They noticed a window in the jewelry store was broken, whereupon he stated to Gillespie, "let's check it out." Smith made a U-turn and parked in front of the jewelry store. He and Gillespie got out of the car and began to pick up the boxes they saw lying on the sidewalk. When they saw the police coming, they dropped the boxes on the sidewalk. He further testified that Gillespie never stuck his hand inside the window of the jewelry store.

Approximately one week after the incident, Smith, his mother, wife and son, along with Gillespie, went to see Lapka and Lapka asked them to leave. Smith testified he would have made restitution to avoid prosecution.

Gillespie testified that they spent the Sunday in question eating and drinking first at Smith's sister's house and later drinking and driving in Smith's convertible. They stopped at a gas station where Smith helped the attendant change a flat tire. When they left the gas station, they went down 47th Street where Smith noted there was a hole in the jewelry store window. They pulled up in front of the store, got out of the car and began picking up boxes when the police arrived. He stated that neither he nor Smith broke into the jewelry store although he did want to take the boxes they saw on the sidewalk.

Officer Bednarkiewicz was called in rebuttal and testified that he and Officer Nielson were in the gas station right before they arrested defend-

ants. He did not see either defendant or anyone else fixing a flat tire. He further testified that upon arrest it was apparent that both defendants had been drinking, although he did not think they were intoxicated.

During closing arguments, the prosecution made several comments which defense counsel objected to and was sustained by the court. Defense counsel made a motion for a new trial which was denied.

OPINION

I.

Defendants argue that their motion for substitution of judges should have been granted. They allege prejudice because the judge held their counsel in contempt for attempting to delay trial, ignored their request to discharge him and forced them to be represented by this counsel on a motion for a substitution of judges. We reject this argument.

■■ A defendant has an absolute right to a substitution of judge for prejudice of the judge if he complies with the statute by moving for substitution within 10 days after the matter is placed on the trial call. (Ill. Rev. Stat. 1977, ch. 38, par. 114—5(a), (b).) He may further move for substitution of judge for cause if supported by an affidavit. (Ill. Rev. Stat. 1977, ch. 38, par. 114—5(c).) The judge will then conduct a hearing to determine the merits of the motion. (Ill. Rev. Stat. 1977, ch. 38, par. 114—5(c).) It must be noted, however, that the statute presumes a good faith allegation of prejudice of the court and not for purposes of delay. (*People v. Peterson* (1979), 70 Ill. App. 3d 205, 207, 387 N.E.2d 951, 953.) *Peterson* further stated "that the trial court may take cognizance of the circumstances surrounding the motion for substitution of judge and may determine in the appropriate case that the motion is not in good faith but for delay."

In the present case, defendants' motion for substitution of judge was not automatic at this stage of the proceedings since the 10-day period for moving for substitution of judge after the matter has been placed on the trial call of a judge had expired. They were only entitled to a hearing with the burden of establishing prejudice. The trial judge took cognizance in the hearing of the number of times this case was continued and defense counsel's attempt to further delay trial by his lack of "preparation" on the date set for trial and denied defendants' motion. The judge informed defendants that there was no hostility or prejudice directed towards them because of their defense counsel's conduct and they would be given a fair trial.

In *People v. Vance* (1979), 76 Ill. 2d 171, 390 N.E.2d 867, the supreme court held "that the burden of establishing actual prejudice rests on the defendant, and the trial court need not justify retaining the case [citation], and this court has said that the trial judge is ordinarily in the best position to

determine whether he has been prejudiced." *Vance*, 76 Ill. 2d 171, 178, 390 N.E.2d 867, 870.

■■ *Vance* further states that "[t]he most that ought to be expected is that the judge will recognize that he has basic predilections and make a conscientious effort to set them aside and give dispassionate consideration to the case before him. More than that can scarcely be expected of any individual." (*Vance*, 76 Ill. 2d 171, 179-80, 390 N.E.2d 867, 871.) In that case, defendant alleged prejudice of the judge as he had presided at an earlier trial of defendant in which defendant had been sentenced to the penitentiary. The supreme court refused to conclude the judge was prejudiced and disqualified from determining defendant's guilt or innocence in a subsequent case. We hold in the present case that defendants have not met their burden of establishing actual prejudice by the trial judge; therefore, the trial court did not commit error in denying the motion for substitution of judge.

## II.

Defendants next contend that Smith's pretrial motion in limine to prevent impeachment by a prior conviction should have been granted. They assert that the State's repeated references to this prior conviction prejudiced Smith at trial and outweighed any probative value resulting from its introduction. We disagree.

■■ Initially, we note that defendants would appear to have waived the issue for review since they did not raise it in their motion for a new trial. (*People v. Jones* (1980), 82 Ill. App. 3d 386, 402 N.E.2d 746; *People v. Baker* (1980), 82 Ill. App. 3d 240, 402 N.E.2d 662.) Nevertheless, since it was raised in Smith's pretrial motion in limine, the judge was aware of the alleged error, and we can consider it under Supreme Court Rule 615(a) which states, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court" (Ill. Rev. Stat. 1977, ch. 110A, par. 615(a)). Therefore, we conclude that defendant has preserved the error for purposes of appeal.

Consequently, it is apparent that the State was within the time limit in using Smith's prior conviction to impeach his credibility. (*People v. Luna* (1980), 81 Ill. App. 3d 246, 401 N.E.2d 662, citing *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695.) In *Luna*, we held that evidence of a prior conviction is admissible if within 10 years from the date of conviction " 'or of the release of the witness from confinement, whichever is the later date.' " *Luna*, 81 Ill. App. 3d 246, 248, 401 N.E.2d 662, 663.

Smith had previously been convicted of robbery and was released in 1970. The conviction in the present case was within 8 years from the date of his release.

Crimes punishable in excess of one year's imprisonment or involving dishonesty or false statement may be used for impeachment purposes if the trial judge determines that the probative value of the prior conviction outweighs the danger of unfair prejudice. (*Allen v. City of Ottawa* (1980), 80 Ill. App. 3d 1032, 400 N.E.2d 629.) The trial judge in exercising sound judicial discretion will consider a number of factors relevant in weighing the probative value of the prior conviction to the issue of credibility. These are: the nature of the prior crime; the extent of defendant's criminal record; the age of defendant; nearness or remoteness of the prior convictions; subsequent activities of defendant; the likelihood defendant will not testify if his motion in limine is denied, and the similarity of the prior crimes to those for which the defendant is on trial. *People v. Kellas* (1979), 72 Ill. App. 3d 445, 389 N.E.2d 1382.

We believe the trial judge considered these factors in making a determination to deny Smith's motion in limine. As the court stated in *Montgomery*, "The experienced trial judge has a sensitivity in this regard which normally can be relied upon to strike a reasonable balance between the interests of the defendant and of the public." (*Montgomery*, 47 Ill. 2d 510, 518, 268 N.E.2d 695, 699.) We think the trial court in denying the motion followed the dictates of *Montgomery*.

■■ Furthermore, we have examined the record and do not find the prosecution's reference to Smith's prior conviction to be excessive. Smith testified on his own behalf and raised the issue of his prior conviction. He was cross-examined about it and references to his prior conviction in closing arguments went to his credibility as a witness. (*People v. Tilden* (1979), 70 Ill. App. 3d 859, 388 N.E.2d 1046.) Additionally, the jury was instructed that the prior conviction was to be considered only as it might affect Smith's credibility, and not as evidence of his guilt in the present case.

### III.

Defendants also contend they were deprived of their right to counsel of their choice or to represent themselves. We cannot agree.

The right to be assisted by counsel includes the right to select counsel of one's choice. (*People v. Langdon* (1979), 73 Ill. App. 3d 881, 392 N.E.2d 142; *People v. Isenberg* (1978), 60 Ill. App. 3d 325, 376 N.E.2d 778.) "However, '* * * such right may not be employed as a weapon to indefinitely thwart the administration of justice, or to otherwise embarrass the effective prosecution of crime.'" *Langdon*, 73 Ill. App. 3d 881, 888, 392 N.E.2d 142, 147.

In *Langdon*, defense counsel filed a motion to withdraw on the day trial was scheduled to begin after numerous continuances. The court denied the motion based on the untimeliness of the motion and request.

Defendants in the present case were originally represented by

Anthony Pacelli. He asked for leave to withdraw and the court informed defendants that whoever they next retained would handle this matter to its conclusion. Thereafter, Mr. Eben filed his appearance on behalf of defendants in October 1977. Eben filed various motions on behalf of defendants and in fact made a demand for trial in December 1977. It was only on the day of trial, after a number of continuances, and the court's refusal to grant another continuance that the issue of defendants' dissatisfaction with Eben's performance appeared. The court in *Langdon* further opined:

"Determination at the point at which a defendant's right to counsel of his choice unreasonably interferes with the administration of justice necessarily depends upon the particular facts and circumstances of each case. [Citation.] Thus, the granting of a continuance to permit substitution of counsel or preparation of a case, or both (as is implicit in the case at bar), is a matter resting within the sound judicial discretion of the trial court [citations], and the trial court's decision will not be disturbed absent an abuse of discretion." *Langdon,* 73 Ill. App. 3d 881, 888, 392 N.E.2d 142, 147.

■■ We find the trial court correctly exercised its discretion in denying defendants' motion for counsel to withdraw on the day of trial.

### IV.

Defendants additionally assert that the joint representation of conflicting interests is improper here. The "potential conflict" allegedly arose when Smith admitted on cross-examination that he was prepared to take all the boxes of jewelry on the sidewalk. Gillespie asserts that he made no such admission at trial. Additionally, defendants assert that Smith's prior conviction affected not only Smith's credibility as a witness, but Gillespie's too. This is mere speculation.

It appears this issue is being raised for the first time on appeal. As such, this would ordinarily constitute a waiver of the issue. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856; *People v. Whooper* (1979), 78 Ill. App. 3d 1079, 1083, 398 N.E.2d 93, 96.) "Nor will plain error be considered as a means of circumventing this rule unless *it is clear from the record* that an error affecting substantial rights was committed." (Emphasis added.) 78 Ill. App. 3d 1079, 1083, 398 N.E.2d 93, 96.

However, even if this issue can be raised for the first time on appeal, permitting one attorney to represent multiple defendants is not a per se violation of the right to effective assistance of counsel. *People v. Spicer* (1979), 79 Ill. 2d 173, 402 N.E.2d 169; *People v. Berland* (1978), 74 Ill. 2d 286, 385 N.E.2d 649.

In *Berland*, a single attorney entered his appearance on behalf of both

co-defendants. The appellate court reversed, holding that there existed the possibility of conflicting defenses and it was impossible for a single attorney to represent both defendants. The supreme court reversed, holding that a defendant must show an *actual* conflict of interest in order to succeed on his claim of ineffective assistance of counsel due to joint representation. *Berland*, 74 Ill. 2d 286, 299-300, 385 N.E.2d 649, 655.

■■ We find no actual conflict in the record. Defendants only argue in their brief as to "potential conflict." Both defendants asserted the same defense at trial and no objection was made to joint representation. And Smith's prior conviction was only used to impeach *his* credibility as a witness. As the supreme court stated in *Berland*, "The court will not disturb a judgment on the basis of hypothetical conflicts." 74 Ill. 2d 286, 301, 385 N.E.2d 649, 655.

## V.

Defendants argue that they were deprived of their constitutional right to present a defense. They assert that their counsel informed the court that he was not prepared and therefore asked for a continuance to locate defense witnesses Ray Proczak and Stephen Corwin; further he advised the court that the State had not complied with defense discovery requests.

As we stated in *People v. Sedlacko* (1978), 65 Ill. App. 3d 659, 668, 382 N.E.2d 363, 370:

> " 'The granting of a continuance to permit preparation for a case, or for the substitution of counsel, necessarily depends upon the particular facts and circumstances surrounding the request, and is a matter resting within the sound judicial discretion of the trial court.' "
>
> "[O]n review the denial of a continuance * * * will not be disturbed unless this discretion has been abused." *People v. Hayes* (1972), 53 Ill. 2d 170, 175, 287 N.E.2d 465, 466-67.

■■ Examination of the record reveals: that this case had been continued a number of times; it had been set with subpoenas approximately one month before; defense counsel failed to notify the State or the court of his need for a continuance until the day of trial, or that a witness "favorable" to the defense had come to his attention approximately one month before trial; defendants' question raised in their bill of particulars had been responded to in the State's answer to discovery; police inventory sheets were to be tendered to the defense either on the trial date or the day after; Mr. Lapka made no insurance claims so enforcement of that subpoena issued to him was unnecessary; and there had been no showing of relevance to enforce the subpoena regarding Lapka's inventory of lighters before trial and additionally this was waived by defense since the information had been elicited on cross-examination. Under these facts and circumstances we find no abuse of discretion in denying defendants' request for a continuance on

the day of trial, particularly since the record does not show defendants were prejudiced thereby. *Sedlacko*, 65 Ill. App. 3d 659, 668, 382 N.E.2d 363, 370.

In *Sedlacko*, defense counsel asked for a continuance on the day of trial asserting he was not prepared and ill. The court indicated he had had ample opportunity to prepare as he had appeared on behalf of defendants 40 days prior to commencement of trial. Defense counsel in the present case had approximately six months since he was retained to prepare for trial. The record indicates his vigorous participation at trial on behalf of defendants.

Additionally, the court informed defendants that they had approximately 2 to 3 days' more time to locate witnesses before presentation of their case. It would appear, however, that the witnesses' testimony would not have substantially aided defendants in their defense. Defense counsel advised the court in his motion for a new trial that Ray Proczak, if permitted to testify, would state that Virgil Brandt admitted that he was the one who broke into the jewelry store. This testimony concerning Brandt's alleged statement would be inadmissible hearsay because we have no objective indicia of the trustworthiness of such a statement as it is unsupported by independent evidence and the party alleged to have admitted committing the burglary is now deceased. (*People v. Craven* (1973), 54 Ill. 2d 419, 299 N.E.2d 1.) Additionally, Proczak's alleged testimony regarding possession of the lighters lost its relevance when defense counsel dropped its subpoena enforcement request after Lapka testified on cross-examination that he had identified and recovered items taken in the burglary.

Stephen Corwin's testimony would not have substantially aided the defense either because it is of doubtful impeachment value. Defendants assert that he was the gas station attendant on duty on the morning in question. All he could have testified to was that he did not see the police officers at the station while he was there. Furthermore, defendants had been aware of this witness for some time before trial and could have taken the necessary steps to subpoena him.

## VI.

Defendants further contend that the prosecutor's misconduct deprived them of a fair trial. They cite six instances of improper and prejudicial comments made by the prosecution during closing arguments.

First, they argue that the prosecutor's comment informing the jury that the offense was probational constitutes reversible error, even though the judge sustained defendants' objection and admonished the jury not to consider the penalty. Defendants rely upon *People v. Burgard* (1941), 377 Ill. 322, 36 N.E.2d 558, as being dispositive. In *Burgard*, defendant was found guilty of involuntary manslaughter with an automobile. The

supreme court reversed as there was no evidence to prove beyond a reasonable doubt defendant committed the crime, nor evidence of criminal negligence. Defense counsel urged in closing arguments that the jury should not send defendant to the penitentiary because it guessed defendant was guilty. The State replied that even if defendant was found guilty, the law allowed the judge to grant probation. The court found this statement could have influenced the jury in arriving at their verdict.

■■ We agree such a remark by the prosecution is improper. Nevertheless, in view of the evidence in the pending case we do not find that the remark influenced the jury in their determination of defendants' guilt. First, the record discloses that the evidence against defendants is so overwhelming that defendants were found guilty beyond a reasonable doubt. Second, timely objection was made at trial and the judge instructed the jury to disregard the remark. As our supreme court stated in *People v. Carlson* (1980), 79 Ill. 2d 564, 577, 404 N.E.2d 233, 238-39:

> "If a timely objection is made either to improper interrogation, or to an improper remark by counsel to the jury, the court can, by sustaining the objection or instructing the jury to disregard the answer or remark, usually correct the error."

In *Carlson*, defendant was sentenced to death for murder. He argued that the prosecutor suggested during cross-examination that he made a prior inconsistent statement which substantially prejudiced him before the jury. 79 Ill. 2d 564, 578, 404 N.E.2d 233, 239.

We find that the trial court in the pending case cured any error in the improper remark by sustaining the objection.

■■ Next, the defense asserted that the prosecution's reference to defendants as thieves was prejudicial and improper. Such a reference was improper but not prejudicial necessitating reversible error. See *People v. Sedlacko* (1978), 65 Ill. App. 3d 659, 382 N.E.2d 363.

Defendants' contention that the prosecutor argued statements on closing arguments not in the record is erroneous. Defendants contend that neither police officer testified as to recovering boxes of jewelry from Smith's car. On the contrary, the evidence discloses that both officers testified that they recovered jewelry from the car.

Defendants also challenge other prosecutorial comments during closing arguments as being improper. They allege that the prosecution's statements as to defendants' guilt, as to the truthfulness of the testimony of the State's witnesses and as to the falsity of defense witnesses' testimony were expressions of personal opinions to the jury. We disagree. Such comments appear to be only inferences as to what the evidence showed. *People v. Olejniczak* (1979), 73 Ill. App. 3d 112, 390 N.E.2d 1339; *People v. Goolsby* (1977), 45 Ill. App. 3d 441, 359 N.E.2d 871.

■■ Defendants' claim that the prosecution's references to Smith's prior

conviction were error also appears to be unfounded. References to Smith's conviction were only for impeachment purposes to highlight his lack of credibility, and therefore, properly used in closing arguments. As we stated in *Olejniczak*, "A prosecutor is allowed great latitude in closing argument." (73 Ill. App. 3d 112, 121, 390 N.E.2d 1339, 1345.) Furthermore, a trial court's determination of the propriety of the closing argument is to be upheld absent a clear abuse of discretion. (73 Ill. App. 3d 112, 390 N.E.2d 1339, 1345.) We conclude there was no error.

In any event, statements complained of as improperly giving the prosecutor's opinion would be held harmless error, even if improper, in view of the overwhelming evidence against defendants. 73 Ill. App. 3d 112, 121, 390 N.E.2d 1339, 1345.

## VII.

Defendants lastly contend they were not proven guilty beyond a reasonable doubt since the State's witnesses' testimony at trial was incredible and contradictory. Defendants assert that Officer Nielson stated at trial that he saw Smith standing in front of Lapka's jewelry store with a small box in his hand but he was approximately three quarters of a block away when he saw this; the side of the street Smith was standing on was unlit and it was very dark out. Defendants argue under these conditions, it was not possible for Officer Nielson to see what he claimed. Defendants additionally assert that at the time Officers Nielson and Bednarkiewicz heard the noise of breaking glass they did not know what direction the noise was coming from nor did they see Smith or Gillespie breaking the glass. Lastly, defendants assert that Officer Bednarkiewicz testified that he found a tire wrench in the back seat of Smith's car at the time defendants were arrested, yet no mention is made of the tire wrench in the written police report. We think this argument is without merit.

■■ It is well established that the weight and credibility to be afforded a witness' testimony is a determination for the trier of fact and unless that determination is so unreasonable, improbable or unsatisfactory as to raise a reasonable doubt of defendant's guilt, it will not be disturbed on appeal. (*People v. Catlett* (1971), 48 Ill. 2d 56, 268 N.E.2d 378.) The testimony of one eyewitness, if positive and credible, is sufficient to convict if the trier of fact concludes that a defendant has been proven guilty beyond a reasonable doubt. (*People v. Jones* (1975), 60 Ill. 2d 300, 325 N.E.2d 601.) The evidence supporting the verdict of guilty here is overwhelmingly beyond a reasonable doubt. Officer Nielson testified that he observed defendants standing in front of the jewelry store. Further, he testified that Gillespie had his hand inside the broken window of the jewelry store, and Smith was walking towards the parked car with a box in his hand. Defendants were apprehended while they were standing in front of the burglarized jewelry

store with stolen property in their possession. Additionally, a tire wrench was found in the back seat of Smith's car. Under these circumstances, we find the evidence at trial not so improbable as to raise a reasonable doubt as to defendants' guilt.

For the reasons stated, the judgment appealed from is affirmed.

Affirmed.

SULLIVAN, P. J., and LORENZ, J., concur.