THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* NELSON OJEDA, a/k/a Carlos A. Ojeda, Defendant-Appellant.

First District (5th Division)    No. 79-1472

Opinion filed December 5, 1980.

Lawrence Wolf Levin and Steven R. Decker, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Myra J. Brown, and Michael K. Demetrio, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

Following a bench trial, defendant was convicted of unlawful delivery of a controlled substance, in violation of section 401(b) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1977, ch. 56½, par. 1401(b)) and sentenced to a term of not less than one year nor more than three years. On appeal, he presents these issues for review that: (1) he was denied due process by the pre-arrest delay; (2) he was denied a fair trial by the State's failure to comply with discovery; and (3) he was not proven guilty beyond a reasonable doubt. We affirm the trial court.

FACTS

Prior to trial, defendant filed a motion for discovery requesting all police reports concerning the occurrence and a motion to dismiss the information alleging prejudicial delay between the time of the offense and the day of arrest. At the subsequent hearing on the motion to dismiss the information, defendant testified that on January 7, 1977, the date of the offense, he was residing at 1025 N. California and on July 11, 1977, the date of his arrest, he was still residing there. He indicated that approximately 25 or 28 people lived in the building in January and that some had moved prior to his arrest in July. He specifically referred to one individual, Julio Martinez, who had moved from the building. Further testimony revealed that Martinez and others did not move until after defendant's arrest and that in April 1977, defendant lived at 2524 West Cortez Street with his family.

Defendant stated that on January 7, 1977, from approximately 10:30 a.m. until 4:30 p.m., he was on Thomas and California Avenues in front of a grocery store owned by Denasio Rodriquez. He stated Rodriquez moved out of Chicago before his arrest, but indicated in later testimony that Rodriquez was still in Chicago. He also stated that he saw Raphael Santiago and Carmen Ortiz on the day of the offense and that Santiago lived in Chicago, but he had not seen him since two weeks before his arrest. He further testified as to the specific address Ortiz lived at in Chicago and that he had seen her after his arrest.

The defense called Officer Hector Castro, who stated that his partners made the application for the arrest warrant for defendant on March 28, 1977. Objections were sustained to defense inquiries of the number of times Castro had seen defendant between January 7, 1977, and March 28, 1977, as well as to the number of attempts made to execute the

arrest warrant between March 28, 1977, and July 1977. After the hearing, defendant's motion to dismiss on the basis of prejudicial delay was denied with a finding that no substantial prejudice existed.

At trial, defendant waived a jury and the State called Castro as its first witness. He testified that at 7:15 p.m. on January 7, 1977, he was on the corner of Cortez and California when he was approached by an individual known to him as "Nelson," later identified in court as defendant. His assignment at the time was to attempt to make undercover drug purchases and his partners, Officers Joseph Reiter and William Pedersen, provided the backup protection. Defendant asked him if he was "looking to cop," and he responded affirmatively. They agreed on a price of $25 and, thereafter, defendant handed him a clear plastic packet containing a substance; whereupon, he handed him the $25. Castro stated that he proceeded to a prearranged location to meet his partners and handed Reiter the bag that he purchased from defendant. Reiter performed a field test on the bag, which resulted in a positive indication of heroin. Stipulated expert evidence presented by the State established that the substance sold to Castro was in fact heroin. He further testified that prior to January 7, 1977, he had never personally arrested defendant.

During cross-examination, Castro noted that he had prepared a one-page supplemental report regarding defendant's sale of heroin to him. Defense counsel then made a motion to strike his testimony, as he had not received that report pursuant to his discovery motion. Following a brief recess, the State tendered the additional report to defense counsel, which did not have a record division number or time stamp placed on it. Defense counsel renewed his motion to strike Castro's testimony, which was again denied. The court stated it would allow all leeway with respect to utilization of this report and, thereafter, cross-examination continued.

Additional testimony by Castro revealed that he had previously made two undercover drug purchases from defendant prior to January 7, 1977, and that Reiter had testified at a preliminary hearing regarding one of those previous sales on December 17, 1976. Castro did not, however, appear in any court proceedings involving his drug purchases from defendant until the present case. Defendant's motion for a directed verdict was denied.

The defense called Pedersen, who testified that he had arrested defendant previously in October 1976 and had appeared at a prior hearing in December 1976 involving drug sales to Castro on September 21, 1976. Pedersen and Castro were the reporting officers for the report prepared regarding the first arrest, which also indicated that they were the arresting officers. Upon cross-examination, Pedersen denied that Castro made the actual physical arrest on October 28, 1976. He also noted that Castro did not testify at the hearing due to his undercover status.

At the close of Pedersen's testimony, defense counsel informed the court that he had served a subpoena on the Chicago Police Department in order to obtain some reports, but had not yet received them. The court granted a four-day continuance until December 26, 1978. On that day, defense counsel indicated he had received the police reports relating to the October arrest and requested that he be allowed to recall Pedersen. The court granted the request. On recall, Pedersen further testified that Castro was listed as one of the reporting officers in the October arrest report in order to receive credit for his work as an undercover officer.

The defense next called Castro, who testified as to prior sales of drugs to defendant. Castro stated that the police report of September 21, 1976, contained an additional supplemental report. He further testified that he did not actually physically arrest defendant in October, but was listed as an arresting officer on that report because he was instrumental in procuring defendant's arrest through his undercover work.

Defendant argued on his motion for a new trial that the State had still not complied with his subpoena regarding the additional police report of the October 28, 1976, arrest. This motion was denied.

## OPINION

■■ Defendant argues that the pre-arrest delay was both prejudicial and unnecessary and as such denied him due process. We disagree. This issue was not raised in defendant's motion for a new trial and thus it appears that it is being raised for the first time on appeal. As such, this would ordinarily constitute a waiver of the issue. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856; *People v. Whooper* (1979), 78 Ill. App. 3d 1079, 398 N.E.2d 93.) However, since it was raised in defendant's motion to dismiss, the judge was aware of the alleged error, and we can consider it under Supreme Court Rule 615(a), which states, "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court" (Ill. Rev. Stat. 1977, ch. 110A, par. 615(a)). Therefore, we conclude that defendant has preserved the error for purposes of appeal.

■■ Under *People v. Lawson* (1977), 67 Ill. 2d 449, 367 N.E.2d 1244, our supreme court held that a defendant must come forward with a clear showing of actual and substantial prejudice emanating from the delay. *Lawson* further stated that if defendant meets this burden, then the State must show the reasonableness of the delay. (See also *People v. Gulley* (1980), 83 Ill. App. 3d 1066, 404 N.E.2d 1077.) We do not feel defendant made an initial clear showing of actual and substantial prejudice. The record reveals that the offense took place on January 7, 1977, and defendant was arrested on July 11, 1977. He testified that there were 25 or 28 people living in his building in January but some had moved prior to

his arrest. There is no evidence in the record to establish how defendant suffered actual and substantial prejudice through the departure of these individuals from his building subsequent to his arrest.

Additionally, defendant failed to establish how his defense was affected by the absence of those individuals whom he testified that he encountered at the grocery store on the day in question since, through his own testimony, he was only there until 4:30 p.m. and the incident took place at approximately 7:15 p.m. He further testified that the three individuals he did encounter at the store were still in Chicago, and he was able to give the address of one of those persons. Therefore, defendant's argument that he was not able to recall specific events of the day of the offense and was also unable to seek assistance from those individuals who may have been with him on that day is meritless. In *People v. McClellan* (1979), 71 Ill. App. 3d 611, 390 N.E.2d 131, we held that the inability to recall is insufficient to establish actual and substantial prejudice. And, further, there is no indication in the record that the testimony of those individuals whom defendant testified he encountered at the store or who previously lived in his building, even if not available, would have aided his defense. As such, defendant has not met his burden of the two-part *Lawson* test, and under these circumstances, the trial court made a proper determination, and the State was not required to show the reasonableness of the delay.

Defendant next argues that he was denied a fair trial by the State's failure to comply with its discovery requests. He specifically asserts that he was prejudiced because he did not receive the additional one-page supplemental report prior to trial, and also for the reason that he did not receive another police report relating to an earlier separate offense pursuant to his subpoena *duces tecum.* We find no sound basis to support this argument.

■■ We note that with regard to the additional one-page supplemental report, defendant did not raise this issue in his motion for a new trial; therefore, this would ordinarily constitute a waiver. (*People v. Jones* (1980), 82 Ill. App. 3d 386, 402 N.E.2d 746; *People v. Baker* (1980), 82 Ill. App. 3d 240, 402 N.E.2d 662.) Nor can plain error be asserted as a means of circumventing this rule unless it is clear from the record that an error affecting substantial rights was committed. We find no plain error or any reason to circumvent the waiver rule. *People v. Precup* (1978), 73 Ill. 2d 7, 382 N.E.2d 227; *People v. Whooper* (1970), 78 Ill. App. 3d 1079, 1083, 398 N.E.2d 93, 96.

■■ Nevertheless, even if this issue were to be considered, it does not appear that defendant was prejudiced thereby. The mandate of *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194, codified in Supreme Court Rule 412(c) (Ill. Rev. Stat. 1977, ch. 110A, par. 412(c)),

requires the State to disclose any evidence in its possession or control which is material either to the guilt or punishment of defendant. In support of his argument, defendant relies on *People v. Elston* (1977), 46 Ill. App. 3d 103, 360 N.E.2d 518; however, this reliance is misplaced. In *Elston*, the withheld evidence consisted of the facts that two of the five occurrence witnesses against defendant attended a lineup at which defendant was present but failed to make any identification, two more witnesses attended the lineup and identified another person there as the one who had committed the offense, and the remaining witness identified defendant only after being shown a Polaroid colored picture of him, and black and white photographs of other individuals. The withheld evidence, therefore, tainted or could have been used to impeach the credibility of all the witnesses against defendant.

In the pending case, defendant received the supplemental report during trial, and the court stated that it would allow all leeway with respect to utilization of that report. Defense counsel, thereafter, continued cross-examination of Castro. We previously held in *People v. Mahaffey* (1978), 60 Ill. App. 3d 496, 377 N.E.2d 85, that where error is alleged, as defendant alleges here, since he did not receive the supplemental report prior to trial, we clearly can review the entire record to determine if, in light of all the evidence adduced, any error involving the withheld evidence was harmless. Testimony in the record established that defendant sold a substance to Castro which was later positively identified as heroin. It does not appear that this supplemental report, had it been provided prior to trial, would have negated defendant's guilt under *Brady*.

Defendant additionally asserts that he could have made more effective use of the police report relating to the October 28, 1976, arrest had it been timely provided since his strategy was to show the improbability of his making a drug sale to Castro on January 11, 1977, if this report showed that this same officer arrested him in October 1976.

Under *Brady*, the State must disclose all evidence material to defendant's guilt or punishment. The proper standard of materiality of undisclosed evidence is that the omitted evidence creates a reasonable doubt of guilt that did not otherwise exist. (*United States v. Agurs* (1976), 427 U.S. 97, 49 L. Ed. 2d 342, 96 S. Ct. 2392.) Testimony from the witnesses reveals that Castro did not make the actual physical arrest, but was listed as an arresting officer on that report in order to receive credit for his undercover work. Further testimony revealed that he did not appear in any prior proceedings involving defendant until the present case. As such, this report would not have created a reasonable doubt of defendant's guilt.

Defendant's final argument is that the court failed to resolve all of the

facts and circumstances in evidence on a theory of innocence rather than guilt. He argues that it would seem incredible that defendant, who was previously arrested for selling narcotics to an undercover police officer in October 1976, would again sell narcotics to the same police officer on January 11, 1977. This argument is untenable.

A court of review will not set aside the conclusion of the trier of fact unless the evidence is so improbable as to raise a reasonable doubt of guilt. (*People v. Yarbrough* (1977), 67 Ill. 2d 222, 367 N.E.2d 666.) In a bench trial, it is the function of the trial judge to determine the credibility of the witnesses and the weight to be afforded their testimony. *People v. Givens* (1977), 46 Ill. App. 3d 1035, 361 N.E.2d 671.

In the pending case, Castro identified defendant as the one who sold him a substance, later identified as heroin, on January 11, 1977. Castro further stated that he had previously purchased heroin from him; however, he had not appeared in any prior proceedings involving defendant. This testimony was corroborated by both Reiter and Pedersen. There is no evidence in the record that defendant knew Castro was an undercover police officer. As such, the trial court made a finding of guilty based on the evidence adduced, and the record supports such a determination.

For the foregoing reasons, the judgment appealed from is affirmed.

Affirmed.

LORENZ and MEJDA, JJ., concur.